## MELDRUM v. STATE.

(No. 788;   Decided March 8th, 1915;   146 Pac. 596.)

APPEAL AND ERROR—JURORS—CHALLENGE TO ARRAY—SELECTION OF JURY LIST—DUTY OF JURY COMMISSIONERS—SUBSTANTIAL COMPLIANCE WITH LAW—DUTIES OF CLERK OF COURT—EVIDENCE—DOCUMENTARY EVIDENCE—STENOGRAPHER'S NOTES OF FORMER TRIAL—ADMISSIBILITY — MUNICIPAL ORDINANCES — CERTIFIED COPIES — CRIMINAL LAW—INTENT AND MOTIVE—RIGHTS OF ACCUSED—CONFRONTATION BY WITNESSES—TOWN MARSHALS—DUTY OF PEACE OFFICERS—HOMICIDE BY ARRESTING OFFICER—ARREST WITHOUT WARRANT—SELF-DEFENSE—MURDER IN SECOND DEGREE—TRIAL—INSTRUCTIONS—PRESUMPTION—HARMLESS ERROR.

1. Jury Commissioners in making up a list of names of persons believed to be competent and qualified to serve, as trial jurors, as prescribed by Sections 978 and 979 Compiled Statutes, 1910, are not required to include names of persons known to them to be incompetent or disqualified to serve, notwithstanding notations in that regard made on the assessment roll by the assessor pursuant to Section 1266 Compiled Statutes, 1910. Such notations are merely advisory and are not binding upon the Commissioners as against their own personal knowledge.

2. A substantial compliance with the law in the preparation of a jury list is sufficient; a substantial compliance requires, that an assessment roll must have been made from which to select; the selection must be made from the names of such roll and must consist of substantially all whom the Commissioners believe to be qualified.

3. Section 984 Compiled Statutes, 1910, requiring every Commissioner to select from the last assessment roll of the

County and make a list of the names of all persons whom
they believe to be competent and qualified to serve, as
trial jurors, commits. the question of qualification and
competency to their judgment and decision and it is no
ground for an attack upon a list so made, that others
might disagree with them in regard to the qualifications of
persons, whose names appear in the list, or others whose
names have been omitted.

4. The duty of the Clerk to prepare jury lists and place the
names in the boxes according to Compiled Statutes 1910,
Sections 987. 992 and 996, is purely ministerial and is
limited to the list of names furnished him by the Jury
Commissioners; the Clerk should not on the theory that
they are disqualified omit some of the names, nor assume
judicial power in passing upon the exemption of one from
jury service.

5. A finding made by a trial court that a foundation laid was
sufficient for the admission of stenographic notes of the
testimony of witnesses given at a former trial, and who
have left the jurisdiction, when fairly supported by the
showing will not be disturbed.

6. The admission of testimony given by absent or deceased
witnesses on a previous trial, where accused had the right
to cross-examine does not violate his Constitutional right
to be confronted by the witnesses against him.

7. A copy of a municipal ordinance certified to by the Clerk
under the seal of the town is admissible in evidence under
the provisions of Section 1587 Compiled Statutes 1910.

8. Where accused, who was a town marshal, claimed that
believing he was acting in the line of his duty, as a police
officer, he attempted to arrest deceased and in the affray
that followed he fired the fatal shot, evidence of the
municipal ordinance, under which accused claimed to have
acted, is admissible where it had not been questioned,
though the vote on it had not been recorded, as required
by Statute.

9. When a defendant in a homicide case submits himself, as
a witness, he may be inquired of, as to his motive or in-
tent in firing the fatal shot or striking the fatal blow, and
notwithstanding the provisions of Section 1355 Compiled
Statutes 1910, making it the duty of all peace officers to
promptly arrest, without warrant, any person violating
within his presence any law of the state, and Section 1356
Compiled Statutes 1910, rendering any peace officer liable
to removal from office for failure to do so, a defendant,

who claimed to have been acting as town marshal in arresting, or attempting to arrest deceased for the violation of a town ordinance, was entitled to have such ordinance, as well as an ordinance relating to his official authority submitted as evidence to the jury on the question of his motive.

10. As a general rule, a peace officer is not permitted to kill or maim one who is resisting arrest for a misdemeanor, but where there is evidence of resistance coupled with an assault and battery by deceased upon defendant, it should go to the jury on the question of self defense.

11. A town marshal, who, after deceased had broken the peace by shouting, followed him until he entered a hotel, may, on deceased leaving the hotel after eating dinner, arrest him; it being the right of a peace officer to follow and arrest without a warrant one who in his presence broke the peace; hence, where the marshal killed deceased in making the arrest an instruction that, if an offense had not been committed in the presence of the peace officer, or within his view immediately before or at the time of the arrest, the arrest was not justified, was improper.

12. Defendant and deceased having engaged in an encounter at or about the time of the homicide, at a place where bystanders could not plainly observe their movements on account of darkness, the evidence showing that defendant emerged with a broken nose and serious bruises, and defendant having testified at the trial, that he believed the killing was necessary in self defense, it was improper for the court to exclude testimony that deceased had threatened accused.

13. Where a town marshal, who shot one whom he was trying to arrest, claimed self defense, evidence of the marshal's reputation for being a prudent, discreet and cautious officer is inadmissible.

14. To constitute murder in the second degree, the killing must be done purposely and maliciously and an instruction defining it, which omits those essentials, is erroneous.

15. In a murder case, an instruction that malice means ill will, hatred, a wilfull intention to do an unlawful act, or a willful act done without just cause, while not carefully worded, was not prejudicial.

16. A charge that, to reduce a voluntary homicide to the grade of manslaughter, it is not only necessary that there should be an adequate cause to produce a degree of anger suffi-

cient to render the mind incapable of cool reflection, but such state of mind must actually exist; hence when a voluntary homicide takes place under the immediate influence of sudden passion, and no excuse exists which will justify the commission, then, to determine whether it is manslaughter or murder in the second degree, the test is, was there an adequate cause to produce such passion? and, if there was such adequate cause, the homicide will be murder in the second degree, is obviously erroneous in omitting the word "not" after "was" in the last clause.

17.  Such instruction is also erroneous as practically informing the jury there is a presumption that the offense is murder instead of manslaughter, thus placing on accused the burden of showing innocence.

ERROR to the District Court of Carbon County, HON. V. J. TIDBALL, Judge.

R. D. Meldrum was convicted of murder in the second degree, upon an information charging that on the 12th day of January, 1912, at the County of Carbon, in the State of Wyoming, he did feloniously, purposely and with premeditated malice, kill and murder one John or "Chick" Bowen. The defendant was Town Marshal of the Town of Baggs, in Carbon County, and was attempting to arrest deceased at the time of the homicide. A motion for a new trial was overruled and the defendant brings error. Other material facts are stated in the opinion.

*N. E. Corthell* and *N. R. Greenfield,* for plaintiff in error.

.· The proceedings had in the selection of the jury list from which the jury was drawn in this case were invalid. (State v. Bolln, et al., 10 Wyo., 439, 471.) The foundation laid for the introduction of a transcript of the stenographer's notes of testimony of witnesses given at the former trial was insufficient. (Comp. Stat., 4560; 2 Cyc., 35; Cooper v. Galbraith, 24 N. J. L., 219; Baldwin v. Flagg, 43 N. J. L., 495; People v. Ballard, 1 Cal. App., 222; 81 Pac., 1040; People v. McFarlane, 138 Cal., 481; 71 Pac., 568;

People v. Long, 44 Mich., 296; 6 N. W., 673; Wheat v. State, 110 Ala., 68; 20 So., 449.) The admission and reading of the transcript to the jury was a violation of defendant's constitutional rights. (Art. 1, Section 10, Wyoming Constitution.) Only three states permit the testimony of a living witness given at a former trial and who has left the jurisdiction, to be proven by secondary evidence. (Jacobi v. State, 32 So., 158, (Ala.); Young v. People, 130 Pac., 1011, 1018 (Colo.); Grant v. State, 148 S. W., 760, 763, (Tex. Cr. App.) The rule excluding such evidence is supported by the better and more abundant authority. (State v. Lea, 33 Pac., 690, (Mont.); Commonwealth v. McKenna, 158 Mass., 207; 33 N. E. 389; State v. Wing, 64 N. E., 514, (Ohio St.); Kirchmer v. Laughlin, 5 N. M., 365; 23 Pac., 175; Montgomery v. Commonwealth, 37 S. E., 841-842, (Va.); United States v. Angell, 11 Fed. 34; Cline v. State, 36 Tex. Cr., 320; Porch v. State, 51 Tex. Cr., 7, (Overruling Cline Case); 17 Ill., 426; 178 N. D., 469; 17 Q. B., 238; 117 Eng. Rep., 1271.) Certified copies of town ordinances are admissible in evidence. (Comp. Stat., 1587; Lindsay v. Chicago, 115 Ill., 120; 3 N. E., 443.) The enactment of the ordinaces offered was within the power of the town. (Comp. Stat., 1578, Par. 12 and 16; White v. Kent, 11 Oh. St., 550; Schmidt v. Indianapolis, 80 N. E., 632, 634; Ex Parte Hoffman, 99 Pac., 517, 518, (Cal.); 28 Cyc., 698, 699.) The constitutionality of the enactment cannot be raised against an officer acting thereunder. (Keady v. People, 32 Colo., 57; 74 Pac., 892, 895.) The ordinances were competent, as bearing upon the question of motive and intent. (Warfield v. People, 41 Colo., 203; 92 Pac., 24; State v. Brannigan, 24 Pac., 767, 770, (Utah); State v. Halliday, 111 La., 47; 35 So., 380; Earles v. State, 52 Tex. Cr., 140; 106 S. W., 138; Neeley v. Com., 123 Ky., 1; 29 Ky. L. R. 408; 93 S. W., 596; State v. Johnson, 8 Wyo., 506.) On an issue of self-defense, evidence of uncommunicated threats is admissible. (Wharton Crim. Evi. 9th Ed., 757; State v. Baldwin, 155 N. C., 494; 71 S. E. 212; See note page

482 Ann. Cas., 1912, C. 6 Ency. of Evi., pp., (787-797) and cases cited; People v. Scroggins, 37 Cal., 676; Babcock v. People, 13 Colo., 516; 22 Pac., 817; State v. Spendlove, 44 Kan., 1; 24 Pac., 67; State v. Jackman, 29 Nev., 403; 91 Pac., 143; State v. Tarter, 26 Ore., 136; 37 Pac., 53; State v. Cushing, 14 Wash., 527; 45 P., 145; 53 Am. St. R., 883; People v. Taylor, 69 N. E., 534; 177 N. Y., 237; Enlow v. State, 154 Ind., 664; 57 N. E. 539; State v. Peterson, 24 Mont., 81; 60 Pac., 809.) Evidence offered of defendant's reputation, as a prudent, discreet and cautious peace officer was competent and it was error to exclude it. (1 Wigmore on Evi., Sec. 59, note page 129; State v. Surry, 23 Wash., 655; 63 Pac., 557; Saye v. State, 99 S. W., 551, (Tex. Cr.). Instructions numbered one and two defining murder in the second degree and the word "malice" were erroneous. (Downing v. State, 11 Wyo., 86, 102; Cribbs v. State, 6 So., 109, 110, (Ala.); Trumble v. Territory, 3 Wyo., 280, 282; Wharton's Crim. Evi. 9th Ed. Sec. 738; Territory v. Gutierez, 79 Pac., 716, (N. M.); Vollmer v. State, 24 Nebr., 838; 40 N. W., 420; Nilan v. People, 60 Pac., 485; Zipperian v. People, 33 Colo., 134; 79 Pac., 1018; Brooks v. State, 90 Ind., 428. Instruction number three as framed had the effect of changing the doctrine of reasonable doubt and depriving defendant of the benefit of such doubt. (Spivey v. State, 45 Tex. Cr. App., 496; 77 S. W., 444.) The last clause of the instruction was misleading and incorrect, as a statement of the law. Instruction number five, defining material allegations of the information, while approved in the cases of Horn v. State, 12 Wyo., 80, and State v. Hollywood, 19 Wyo., 493, and perhaps correct under the facts in those cases was prejudicial under the facts here. (State v. Pressler, 16 Wyo., 214, 221.) If given at all, this instruction should have been limited to voluntary manslaughter. (Nilan v. People, 60 Pac., 485; 27 Colo., 206; Fahnstock v. State, 23 Ind., 262; Ross v. State, 8 Wyo., 385.) Instruction number nine placing dying declarations upon the same footing as that of witnesses present and testifying in court was, and

is sufficient in itself to require a reversal of the judgment.
(State v. Scott, 142 Pac., 1053; Nordgren v. People, 211 Ill.,
425; 71 N. E., 1042; 21 Cyc., 992, 993; 10 Am. & Eng.
Ency. of Law (2 Ed.) 386; Roscoe on Crim. Evi. (10 Ed.)
251; Wharton's Crim. Evi. (9th Ed.), Sec. 276, et seq.;
People v. Kraft, 148 N. Y., 631; 43 N. E., 80; People
v. Corey, 157 N. Y., 332; 51 N. E., 1024; State v. Doris,
51 Ore., 136; 94 Pac., 44; State v. Valman, 140 Pac.,
1119; State v. Eddon, 8 Wash., 292; 36 Pac., 139; Zip-
perin v. People, 79 Pac., 1018; 33 Colo., 134; Bush v.
State, 34 S. E., 109 Ga., 120; People v. Warren, 102 N.
E. 201, (Ill.). While courts may pass upon the admissi-
bility of the declaration offered, a ruling in favor of admis-
sion is not conclusive, that it is a dying declaration, which
question is one to be finally determined by the jury. (Peo-
ple v. Thompson, 145 Cal., 717; 79 Pac., 435-437; State
v. Doris, 94 Pac., 48; State v. Read, 53 Kan., 767; 37
Pac., 174; 42 Am. S. R., 322; Smith v. State, 110 Ga.,
255; 34 S. E., 204.) Where the right to make an arrest
without warrant exists, it may be made at any subsequent
time, as well as at the time of the commission of the offense.
(3 Cyc., 878-883.) The instruction given, as to the powers
and duties of peace officers, were in the main prejudicial.
The right of the defendant to have received in evidence
the town ordinances, as well as his clear right to explicit
and positive instructions to the jury, as to his powers and
duties in making the arrest, are fully sustained by the au-
thorities. (Bishop New Crim. Proc., Sec. 160, and cases
cited; State v. Dierberger, 96 Mo., 66; 9 A. S. R., 380; 10
S. W., 168; State v. Fuller, 96 Mo., 165; 9 S. W., 583;
State v. Phillips, 119 Iowa, 652; State v. Gosnell, 74 Fed.
737; Stevens v. Com., 194 Ky., 32; 30 Ky. L. R., 200;
98 S. W., 284; Lynn v. People, 170 Ill., 527; 48 N. E.,
964; State v. Bland, 97 N. C., 438; 2 S. E., 460; Hawkins
v. Com., 61 Am. Dec. note pp. 151, 164; Boykin v. State,
22 Colo., 496; 45 Pac., 419; State v. Weston, 98 Ia., 125;
67 N. W., 84; Peter v. State, 23 Tex. App., 684; 5 S. W.,
226; State v. Sigman, 106 N. C., 726; 11 S. E., 520;

Doolin v. Com., 95 Ky., 22, 29; 23 S. W., 659, 684; State v. McNally, 87 Mo., 644.) Instructions numbered twelve and thirteen dealing with the subject of self-defense were misleading under the facts in the case. Instruction number thirteen may be permissible to the extent that it declares that the defendant urging self defense must not say or do anything for the purpose of provoking a difficulty. The remainder of the sentence goes beyond the limits allowed by the authorities on the subject. In instructing on the subject of self defense, it is the duty of the court to keep in mind, not only the theory of the prosecution, but also the theory of the defense, insofar as it is supported by any substantial evidence. (Boykin v. People, 22 Colo., 496; 45 Pac., 422; Meuly v. State, (Tex. Cr. App.) 9 S. W., 563, 566; Drake v. State, (Tex. Cr. App.) 80 S. W., 1005; Winters v. State, (Tex. Cr. App.), 40 S. W., 303.) The closing sentence of instruction number sixteen apparently places the burden upon defendant to establish facts of self defense by a preponderance of the evidence. Such a burden is not properly laid upon the defendant in any case. (Foley v. State, 11 Wyo., 464, 480.) Instruction number twenty-eight dealing with the weight and credit to be attached to the transcript of testimony of absent witnesses, which was read to the jury, directed the same consideration to be given to that evidence, as to all other evidence in the case. The court exceeded its province in giving an instruction which would lead the jury to believe that in law an arbitrary valuation was to be placed upon the same, equal in all respects to that of each and every witness who had testified in the presence of the jury. Affidavits filed with reference to certain misconduct of the jury fully justify the granting of the motion made for a new trial. (Nicholson v. State, 18 Wyo. 298, 314-315.) The denials of the jurors and officers also presented by affidavits were insufficient to overcome the showing of misconduct made by affidavits presented by defendant. (Hempton v. State, 86 N. W. 596 (Wis.); Commonwealth v. Fisher, 226 Pa. St. 189, 75 Atl. 134; 134 Am. St. Rep. 1027, 26 L. R. A. (N. S.) 1009; State v.

Strodemier, 41 Wash. 159, 83 Pac. 22; Gamble v. State, (Fla.) 33 So. 471; Ryan v. Harrow, 27 Ia. 494, 500; Bilton v. Territory, 1 Okla. Crim. 560, 99 Pac. 163; Churchill v. Cir. Judge, 56 Mich. 536, 23 N. W. 211; State v. West (Ida.) 81 Pac. 107; Davis v. State, 35 Ind. 496, 9 Am. Rep. 760; People v. Backus, 5 Cal. 275; Cantwell v. State, 18 Oh. St. 477; State v. Heller, 22 Colo. 11, 43 Pac. 124, 126.) Visiting the barber shop was misconduct, although accompanied by the bailiffs. (State v. Nelson, 65 Kan. 689, 70 Pac. 633.) It was error for counsel for the state to suggest in the presence of the jury that they be permitted to attend the ball game. (Parker v. State, 10 Oh. St. 89, 92; Coleman v. State, 163 Ind. 503, 72 N. E. 568, 570.) Communications with a jury during their deliberations are prejudicial. (State v. La Grange, 99 Iowa 10, 68 N. W. 557; Show v. State, 79 Miss. 577, 31 So. 209; Renfro v. State, 79 S. E. 758 (Ga.); Brown v. State, 106 N. W. 536; Richards v. State, 74 Ind. 275; State v. Heller, 22 Colo. 11, 43 Pac. 124, 126; Booker v. State, 54 Tex. Cr. 80, 111 S. W. 744.)

The above cases apply with equal force to the proposition, that it is prejudicial error on the part of the jury and officers in charge to permit a bartender to communicate with members of the jury, especially when most of the witnesses on the part of the prosecution were bartenders and stage drivers, who may be assumed to have found an agreeable companion and sympathizer in "Marley", the bartender.

The procedure relative to taking depositions should be definitely settled. There is no provision of statute authorizing an opposing party to submit oral interrogatories, when depositions are taken upon commission. In addition to the provisions of our statute, the general rule is that all interrogatories must be in writing. (4 Ency. of Evi. 418, note 89; Neeves v. Gregory, (Wis.) 56 N. W. 909; Cook v. Shorthill, (Ia.) 48 N. W. 85; Burnham v. Stoutt, (Utah) 99 Pac. 1072.)

*D. A. Preston,* Attorney General; *A. McMicken,* County and Prosecuting Attorney, and *Charles E. Blydenburgh,* for defendant in error.

The proceedings had in the selection of the jury list from which the jury was drawn were in conformity with the statute (Sec. 984 Comp. Stats. 1910; State v. Tighe, 71 Pac. 3, 24 Cyc. 213, 217, 218.) In taking depositions an oral examination is not permitted on written interrogatories, (Cook v. Shorthill, 48 Nev. 85; 13 Cyc. 891; Burnham v. Stoutt, 99 Pac. 1072) unless otherwise provided by statute. (Wainwright v. Low, 49 Hun, (N. Y.) 283; Anderson v. West, 9 Abbott Prac. (N. S.) 209, Clayton v. Yarrington, 16 Abb. Pr. 273, Note; Laidly v. Rogers, 22 N. Y. Supp'l. 468; Grill v. Screw Co. L. R. C. P. 600.) The requirements of the bill of rights or constitution that the accused shall be allowed to meet the witnesses face to face is complied with, when he has at a former trial been confronted by the absent witnesses and offered the opportunity to cross-examine them and at the latter trial meets the witness who gives evidence of what such former testimony was. (State v. Nelson, 75 Pac. 506, 507, 68 Kas. 566; State v. King, 24 Ut. 482, 68 Pac. 419, 91 Am. St. Rep. 808; State v. Harmon, 70 Kas. 47, 78 Pac. Rep. 805; People v. Fish, (N. Y.) 23 N. E. 322, 323; Cooley on Const. Limitations, 5 Ed. 389; People v. Williams, 35 Hun, 516; State v. Banks, 35 So. 370; Com. v. Cleary, (Pa.), 23 Atl. 1110; Brown v. Com. 73 Pa. St. 321; Sneed v. State, 1 S. W. 68 (Ark.); Hurley v. State, 29 Ark. 22; Shackleford v. State, 33 Ark. 539; Dolan v. State, 40 Ark. 461; Vaugn v. State, 24 Ark. 889; Cooper v. State, 7 Tex. Crim. Ap. 194; Post v. State, 10 Tex. Crim. Ap. 579; Garcia v. State, 12 Tex. Crim. Ap. 335; Parker v. State, 18 Tex. Crim. Ap. 72; Connor v. State, 23 Tex. Crim. Ap. 378; McCullum v. State, 29 Tex. Crim. Ap. 162; People v. Oiler, 4 Pac. 1060, 66 Calif. 101; State v. Johnson, 12 Nev. 121; People v. Chin Hane, 41 Pac. 700 (Calif.); State v. Vance, 38 Vt. 1, 110 Pac. 434; State v. Green, 38 Ut. 389, 115 Pac. 181; State v. Inlow,

(Ut.) 141 Pac. 533.) Secondary evidence of the testimony of a witness given at a former trial, who was then cross-examined by defendant is made admissible upon a proper showing, that the witness has since died or removed from the jurisdiction. The case of Kline v. State, 36 Tex. Crim. Ap. 320, holding to the contrary was overruled in Porch v. State, 99 S. W. 1124 (Tex.) (People v. Plyer, 58 Pac. 904; Brown v. Com. 73 Pa. St. 321, 23 Atl. 1112; State v. George, 63 N. W. 100 (Minn.); State v. Elliott, 2 S. W. 411 (Mo.); Stigh v. People, 11 N. W. 782 (Mich.); U. S. v. McComb, 5 McClain 287; Vol. 17 Meyer Fed. Dec. Page 136, Sec. 436; Jackson v. State, 51 N. W. 89; Spencer v. State, 132 Wis. 509, Vol. 13 Am. &c. Eng. Anno. Cases 973; Hobbs v. State, 112 S. W. 308; State v. Simmons, 98 Pac. 277; People v. Penhollow, 42 Hun, 103 (N. Y.); People v. Gilhooley, (N. Y.), 95 N. Y. St. 636, 181 N. Y. 551, 80 N. E. 1116; Ray v. State, 45 So. 698 (Ala.); Jones v. State, 128 Ga. 23, 57 S. E. 313; Lake v. Com. 104 S. W. 1003; State v. Herlihy, 102 Me. 310, 66 Atl. 643; Dowd v. State, 108 S. W. 389; Pratt v. State, 109 S. W. 138; People v. Garnett, 98 Pac. 247 (Cal.) The showing may be made by affidavit and a finding that it is sufficient will not be disturbed, if the finding is fairly supported by such evidence. (Young v. People, 130 Pac. 1018 (Colo.) The authorities cited by plaintiff in error are cases wherein there was an insufficient showing of diligence. The great weight of authority supports the proposition, if the showing be sufficient. (Enc. of Evi. Vol. 14, Pgs. 583-585.) The ordinances offered in evidence were not properly authenticated and were inadmissible. (Enc. of Evi., Vol. 2, Pg. 967.) Affidavits may be used to support objections to documentary evidence. (1 Enc. of Evi. 726.) Their exclusion was not prejudicial for the reason that defendant was permitted to testify as to what he regarded his duty to be in regard to making the arrest under the ordinance. An ordinance repugnant to the laws of the state is invalid. (Section 1578 Compiled Statutes.) There is no authority for an arrest with-

out warrant for a violation of municipal ordinances or mis-
demeanors, except upon view.   (Dillon on Municipal Cor-
porations, 5th Ed., Vol. 1, Sec. 390; Low v. Evans, 16 Ind.
486.)   An arrest without a warrant is not justifiable, if
the person arrested was not engaged in a breach of the
peace or about to escape, after the commission of a felony.
(Pinkerton v. Verber, 44 N. W. 579 (Mich.); Wiggins v.
State, 80 S. E. 724.)   A defendant is permitted to estab-
lish his good character for the particular trait involved in
the offense for which he is being tried.   The only question
involved in a murder case, as to defendant's character, is
whether his character was that of peace and quietude.
(Underhill on Criminal Evidence, Page 96, Section 77;
Enc. of Evi., Vol. 3, Pg. 20; Walker v. State, 102 Ind.
502, 1 N. E. 855; State v. Bloom, 68 Ind., 54; State v.
Surry, 23 Wash. 655, 63 Pac. 557.)   An exception is rec-
ognized where negligent homicide is charged and the
Texas case cited by plaintiff in the 99 N. E. is of that
class.   Evidence offered to show that defendant's reputa-
tion was that of a prudent, discreet and cautious peace
officer was properly excluded.   The evidence disclosed that
Bowen was unarmed; that defendant was armed and that
Bowen did not strike a blow until after one or more shots
had been fired.   The rule is that no threat previously made
by the deceased whether communicated to the defendant
or not is admissible in trials for homicide, unless the evi-
dence shows that at the time of the killing the deceased
was making some demonstration towards the accomplish-
ment of a perpetration of such threats.   (Roberts v. State,
68 Ala. 164; Green v. State, 69 Ala. 9; Ragsdale v. State,
134 Ala. 24, 32 So. 674; Hughey v. State, 47 Ala. 97;
Burke v. State, 71 Ala. 377; People v. Campbell, 59 Calif.
243, 43 Am. Rep. 257; Smith v. State, 25 Fla. 517, 6 So.
482; Turpin v. State, 55 Md. 462; Jenkins v. State, 80
Md. 72, 30 Atl. 566.)   Where defendant is the aggressor,
he cannot under the pretext of self defense bring on a diffi-
culty and shield himself by proof of previous threats.
(Burke v. State, 71 Ala. 377; Scroggins v. State, 120

Ala. 369 and cases there cited; Steele v. State, 14 So. 841
(Fla.); Bond v. State, 21 Fla. 738; Garner v. State, 28
Fla. 113, 9 So. 835, 12 So. 638; Wilson v. State, 30 Fla.
234, 11 So. 556.) Defendant being the aggressor, an un-
communicated threat by Bowen was not admissible in
evidence as tending to show an overt act on the part of
Bowen. (Vaughn v. State, 16 S. E. 64; Vann v. State, 83
Ga. 46, 9 S. E. Rep. 945; Lingo v. State, 29 Ga. 470;
Carr v. State, 14 Ga. 358; Hoye v. State, 39 Ga. 718;
Peterson v. State, 50 Ga. 142; State v. Elliot, 45 Ia. 486;
Morrison v. Com. 74 S. W. 277; Payne v. Com. 58 Ky.
379; Riley v. Com. 94 Ky. 266, 22 S. W. 222; Com. v.
Hoskins, 35 S. W. 284; 3 Rice on Evidence 362; Wharton
Crim. Ev., Sec. 757; 9 Am. & Eng. Ency. Law 673;
Johnson v. State, 54 Miss. 430; State v. Alexander, 66
Mo. 148; State v. Fontenot, 48 La. Ann., 19 So. 111;
Harris v. State, 47 Miss. 318; Edwards v. State, 47 Miss.
581; Hill v. State, 16 So. 901; State v. Hall, 9 Nev. 58;
State v. Ferguson, 9 Nev. 106; State v. Stewart, 9 Nev.
120; Irwin v. State, 43 Tex. 236; State v. Kenyon, 18
R. I. 217, 26 Atl. 199; People v. Halliday, 5 Ut. 467, 17
Pac. 118.) There was no proper foundation laid for the
introduction of evidence regarding uncommunicated
threats. (Rutledge v. State, 88 Ala. 85, 7 So. 335; Note
76, Pg. 789, Vol. VI, Ency. of Evi.; State v. King, 47
La. Ann. 28, 16 So. 566; Creswell v. State, 14 Tex. App.;
State v. Williams, 46 La. Ann. 709, 15 So. 82; Chase v.
State, 46 Miss. 683; Gafford v. State, 122 Ala. 54, 25 So.
10; State v. Ford, 37 La. Ann. 443; State v. Spell, 37
La. Ann. 20; State v. Cushing, 17 Wash. 544, 50 Pac.
512; State v. Janvier, 37 La. Ann. 644; State v. Cushing,
17 Wash. 544, 50 Pac. 516; Wharton Crim. Evidence,
Sec. 691; State v. Frierson, 51 La. Ann. 706, 25 So. 396;
State v. Barker, 46 La. Ann. 798, 15 So. 98; King v.
State, 8 So. 856 (Ala.); Stidwell v. State, 107 Ala. 16,
19 So. 322; Wilson v. State, 30 Fla. 234, 11 So. 556, 17
L. R. A. 654; Garner v. State, 28 Fla. 113, 9 So. 835, 29
Am. St. R. 232; State v. Christian, 44 La. Ann. 950;

State v. Beck, 46 La. Ann. 1419; State v: Perioux, 107 La. Ann. 601, 31 So. 1016; State v. Walsh, 44 La. Ann. 1122, 11 So. 811; Helms v. U. S. 52 S. W. 63.) Meldrum was a trespasser and the aggressor from the beginning. (Robertson v. State, 29 So. 537-539.) He had no right to arrest without process, except where the offense was committed or attempted on view. (Sections 1597 and 5392 Compiled Statutes 1910.) He did not arrest Bowen until thirty or forty minutes after the alleged breach of the peace was committed, and he had inquired of Vernon and Burch and others if Bowen had hollered. He was dragging Bowen to a jail of his own on his own premises; he dragged him outside of the store lights and shot him to death. · See Bowen's dying declaration. The true meaning of Section 6249 Compiled Statutes is that trial jurors in a capital case shall not be allowed to separate. As to jurors separating, jurors may separate to attend a call of nature, when in charge of a bailiff. (Neal v. State, 64 Ga. 272; Skates v. State, 64 Mo. 644; State v. Payton, 90 Mo. 220; Masterson v. State, 144 Ind. 240; State v. Washburn, 91 Mo. 571; State v. Lytle, 27 N. C. 58; Edwards v. Territory, 1 Wash. Ter. 195; State v. Dyer, 139 Mo. 199; Carter v. State, 78 Miss. 348.) ·To visit a dying brother; (Coleman v. State, 59 Miss. 484.) To visit their homes for a change of linen; (State v. O'Brien, 7 R. I. 337.) Or, a juror seriously ill may be put to bed in a room separate from but communicating with the jury room. (Goerson v. Com. 106 Pa. St. 477; People v. Bush, 68 Cal. 623; People v. Bonner, 19 Cal. 426; Jack v. State, 52 Wis. 211; Coleman v. State, 17 Fla. 206.) A new trial will not be granted merely because the jury while in charge of an officer attended a theater. (Moore v. People, 26 Colo. 213, 57 Pac. 857; Jones v. People, 6 Colo. 452, 45 Am. Rep. 526.) Or a church. (State v. Kent, 5 N. Da. 516, 67 N. W. 1052, 35 L. R. A. 518.) Or, walked through a jail. (State v. Barber, 74 Mo. 292, 41 Am. Rep. 314.) Or, had their pictures taken in a photo gallery. (State v. Taylor, 134 Mo. 109, 35 S. W. 92.) Or, in taking a ride by per-

mission of the Court, rode by the scene of the homicide. (Palmer v. State, 65 N. H. 221, 19 Atl. 1003.) A sick juror allowed to walk in charge of a bailiff. (State v. Griffin, 71 Ia. 372.) It is proper to permit jurors to be supplied with medicines. (O'Shields v. State, 55 Ga. 696.) Change of clothing. (State v. Caulfield, 23 La. Ann. 148.) And other necessaries where it can be done without exposing them to unfair influences. Broadly speaking, no merely temporary separation of the jury is sufficient to justify a reversal, if during the time of the separation they are in charge of an officer, and he keeps them in his actual sight and hearing, or when this is not possible, the circumstances are such that it is apparent that they have not been tampered with or influenced to the prejudice of the defendant. (12 Cyc., Pg. 774 and cases cited under notes 54 and 55.) The separation of jurors while dining at a hotel is allowed. (Wright v. State, 35 Ark. 639; Kee v. State, 28 Ark. 155; Territory v. King, 6 Da. 131, 50 N. W. 623; Coleman v. State, 17 Fla. 206; State v. Riley, 41 La. Ann. 693, 6 So. 730; Territory v. Hart, 7 Mont. 489, 17 Pac. 718; State v. Baker, 63 N. C. 276; Odle v. State, 6 Bax't (Tenn.) 159.) The lodging of jurors in different sleeping rooms of the same hotel ranging along and opening upon a common hall. (Wright v. State, 35 Ark. 639; People v. Bush, 68 Cal. 623, 10 Pac. 169; Minor v. Com., 5 Ky. L. Rep. 176; State v. Duvall, 51 La. Ann. 497, 25 So. 384; Kennedy v. Com., 2 Va. Cases 510.) It is not an improper separation of the jury where the officer having them in charge keeps the entire jury within his view and hearing while they are eating, or locks and guards the rooms or portions of the house in which they lodge. As a general rule a new trial will not be granted when it clearly appears that defendant has not been injured or prejudiced by the misconduct. (Wright v. State, 35 Ark. 639; People v. Boggs, 20 Calif. 432; People v. Lee, 17 Calif. 76; State v. Harrigan, 9 Houst. 369 (Del.) ; Cornwall v. State, 91 Ga. 277; Hunter v. State, 43 Ga. 483; State v. Reed, 3 Ida. 754; Reins v. People, 30 Ill. 256; Midlar v. State,

26 Ind. 171; Whelchel v. State, 23 Ind. 89; State v. Allen, 89 Ia. 49; State v. Bruce, 48 Ia. 530; State v. Gould, 40 Kan. 258; State v. McKinney, 31 Kan. 570; Stout v. State, 76 Md. 317; Com. v. White, 148 Mass. 429; Com. v. Roley, 12 Pick. 496; State v. Madigan, 57 Minn. 425; Pope v. State, 36 Miss. 121; Browning v. State, 33 Miss. 47; State v. Fairland, 121 Mo. 137; Carleton v. State, 43 Neb. 373.)    It is gross misconduct on the part of jurors to use intoxicating liquors to excess, during the trial or during their deliberations and perhaps improper to use them at all.    But, whether a new trial should be granted for this cause, depends on the circumstances.    (12 Cyc., pgs. 725-726; State v. Cucuel, 24 N. J. L. 249; State v. Livingston, 64 Ia. 560; Wilson v. Abrahams, 1 Hill (N. Y.) 207; Stone v. State, 4 Hump. (Tenn.) 27; U. S. v. Gilbert, 2 Summ. (U. S.) 19; Pratt v. State, 56 Ind. 179; Russell v. State, 53 Miss. 368; Roman v. State, 41 Wis. 312; Westmoreland v. State, 45 Ga. 225; Wood v. State, 34 Ark. 341; Tuttle v. State, 6 Tex. App. 556; State v. Tallow, 34 Kan. 80; State v. Barber, 74 Mo. 292; State v. Washburn, 91 Mo. 571; Jones v. People, 6 Colo. 452; People v. Williams, 142 Pac. 124, 128; People v. Romero, 12 Calif. App. 406, 107 Pac. 700, 711; People v. Dugan, 88 Cal. 602, 26 Pac. 500.)    A juror cannot impeach his own verdict.    (12 Cyc. 749, 750; Nicholson v. State, 18 Wyo. 314; Tracy v. State, 46 Neb. 361; McAvoy v. State, 58 S. W. 1010.)    The criticism of instruction number one defining murder in the first degree is not well taken.    (Felton v. United States, 96 U. S. Rep. 699, 24 L. C. P. Co. Ed. 875; Castner v. State, 79 N. W. 713 (Neb.); People v. Roberts, 81 Pac. 734 (Calif.)    The word "irresistible" used in instruction number two was approved in Downing v. State, 11 Wyo. 104.    See also State v. Davis, 62 Am. St. Rep. 837.    Malice may be implied from acts.    (Ross v. State, 8 Wyo. 380; Gustaveson v. State, 10 Wyo. 324.)    The instruction on material allegations is supported by Horn v. State, 12 Wyo. 152; Hollywood v. State, 19 Wyo. 515.    Dying declarations, if admissible, as

such should be given the same weight as testimony of the declarant, if sworn in the case. (Brennan v. People, 86 Pac. 79 (Colo.); Bateman v. State, 80 S. W. 88; State v. Kuhn, 90 N. W. 736, 21 Cyc. 1026; O'Boyle v. Com. 40 S. E. 124; Com. v. Johnson, 165 S. W. 985; Allen v. State, 68 S. W. 28, 21 Cyc. 982; Smith v. State, 44 S. E. 817.) The instructions given, as to the powers and duties of peace officers in making arrests without warrant are supported by the authorities. (Sections 1577 and 1355 Compiled Statutes 1910; People v. Johnson, 13 L. R. A. 165 (Mich.); Wahl v. Walton, 16 N. W. 397 (Minn.); Pow v. Beckner, et al., 3 Ind. 475; In Re McKay (Gen. Sess.) City H. Rec. 95; Com. v. Cosler (Quar. Sess.) 8 Kulp. 97; Marshall v. Cleaver (Del.) 56 Atl. 380; Wiggins v. State, 80 S. E. 724.) The justification for killing a person sought to be arrested for a misdemeanor rests upon the ground of self defense. (Com. v. Rhoades, 23 Pa. Super. Ct. 512; Com. v. Grear, 20 Pa. Co. Ct. 535; Plasters v. State, 1 Tex. App. 673; Smith v. State, 59 Ark. 132, 43 Am. St. Rep. 20, 26 S. W. 712; Thomas v. Kincaid, 53 Ark. 502, 15 L. R. A. 558, 29 Am. St. Rep. 68, 18 S. W. 354; Clements v. State, 50 Ala. 117; State v. Smith, 101 N. W. 110, (Ia.) A peace officer who attempts illegally to make an arrest cannot plead self defense, where the resistance grows out of resistance of such arrest. (Robertson v. State, 53 Ark. 516, 14 S. W. 502; State v. Rollins, 113 N. C. 722, 18 S. E. 394; Peter v. State, Tex. App. 584, 5 S. W. 228; Johnson v. State, 58 Ark. 57, 23 S. W. 7; State v. Deitz, 59 Kas. 576, 53 Pac. 870; State v. Phillips, 67 L. R. A. 292, 3 Cyc. 878, 880.) Instruction number thirteen on self defense is a correct statement of the law. Where the evidence is clear, as to guilt, the case will not be reversed for erroneous instructions, if it does not appear that the instructions misled the jury. (Eidlehoff v. State, 5 Wyo. 19; Ross v. State, 8 Wyo. 387; Miller v. State, 3 Wyo. 663; Woody v. State, 136 Pac. 430.)

SCOTT, JUSTICE.

The plaintiff in error brings error to reverse a judgment upon a verdict convicting him of the crime of murder in the second degree. It appears from the evidence that Meldrum was at the time of the homicide Marshal of the Town of Baggs in Carbon County in this State, and on the evening of January 12, 1912, was called by phone from the supper table at his boarding house by the Mayor of the town to quiet a disturbance within the town limits and several blocks from his boarding house by some drunken or partially intoxicated men, among whom, he was informed, was the deceased, who was known as John or "Chick" Bowen. The marshal investigated the disturbance and found Bowen and three companions in a saloon known as Davis' saloon and then and there accused Bowen with "hollering" and making a disturbance and told him to quit hollering on the street. Bowen resented the accusation and said that anyone who said he was hollering was a liar. The marshal told Bowen he would investigate further and departed from the saloon. Shortly thereafter Bowen and his companions went out on the street again and continued the disturbance. The marshal then being directly across the street and within hearing of the disturbance started after the parties who went down the street and entered the Elkhorn Hotel and, when the marshal reached the hotel, they were seated at a table in the dining room preparatory to taking their supper. The parties were in the hotel from one-half to three-quarters of an hour, when they came out of the hotel, after finishing their supper, and the defendant then placed Bowen and one Salisbury under arrest. The former resisted and did not go willlingly and the marshal used force to compel him to accompany him, while Salisbury followed at a short distance. In this manner they progressed about sixty feet diagonally across the street when Bowen and the marshal came to a standstill, and an altercation took place between them, during which several shots were fired by the marshal with his pistol and he and Bowen fell to the ground, the marshal

face downward and Bowen across his back. One of the shots resulted in a mortal wound from which Bowen subsequently died. There is a conflict in the evidence as to the events immediately preceding the shooting, the defendant testifying that Bowen struck him on the head and in the face and broke his nose and that he fired the shots in self defense. The witnesses for the State did not see any blows. Bowen in his dying declaration said he struck the defendant a time or two after they fell. The defendant 'said the shots were fired before they fell and at the time when Bowen had his left arm about his neck and was beating him in the face with his right fist. The defendant testified that he was 47 years old and that Bowen was 30 years old and weighed about 50 pounds more than the defendant. After the shooting the marshal was found to have a broken nose and bruises on the back of his head. All the witnesses agree that both men were constantly and rapidly shifting their positions and that because of this and the darkness it was difficult to see the movements of the respective parties. There is some conflicting evidence as to previous threats by Bowen against the defendant and as to a remark claimed to have been made by the defendant to Bowen, after the shooting, that he "told him he would get him." Bowen was unarmed at the time of the shooting.

1. The defendant assigns as error the overruling of his challenge to the array and which challenge is based upon the following grounds, to-wit: "1. Because said regular panel was not drawn in compliance with the provision of Chapter 80 of the Statutes of the State of Wyoming. 2. Because the said regular panel was not drawn from the body of the county. 3. Because the said regular panel was drawn almost entirely from Jury Box No. 3, and that said Jury Box No. 3 does not contain all the names of the qualified jurors residing within the five-mile limit, and that in addition to the names of the qualified jurors residing within the five-mile limit contained in said Jury Box No. 3, there reside within said five-mile limit about 100 per-

sons possessing all the qualifications of jurors whose names have not been placed in said Jury Box No. 3. That the paper hereto attached, marked Exhibit 'A' and made a part hereof, consisting of three pages and containing a list of names and addresses contains all the names of the persons whose names have been placed in said Jury Box No. 3, and from which the regular panel has been largely made up, as defendant is reliably informed and verily believes, and defendant is further informed that all the names contained on said Exhibit 'A', are not in said Jury Box No. 3, and contains merely the list of the names from which the jury commissioner selected the names that were placed in said Jury Box No. 3, but that all of said names were not placed in said box. Defendant is further reliably informed and believes that the names contained and recited in Exhibit 'B' is a full, true and correct list of the persons residing within the five-mile limit who are qualified to serve as jurors and whose names appeared upon the assessment roll and that as appears from a comparison of said Exhibits 'A' and 'B' the said Jury Box No. 3 does not contain the names of all the persons residing within said five-mile limit. Wherefore the defendant prays judgment and that said regular panel be quashed." This challenge and exhibits referred to therein are verified by the defendant. Exhibit "A" is a list of approximately 288 persons, the names of whom, it is alleged, were placed in jury box number three. Exhibit "B" contains a list of approximately 353 persons whose names it is alleged were not all placed in jury box number three. In opposition to the challenge the affidavit of the clerk of the court was filed, in which he deposed as follows:

"I am the duly and regularly elected, qualified and acting Clerk of the District Court in and for the County of Carbon, State of Wyoming. That as such Clerk I was present at the time when the Jury Commissioners provided by statute made the list of jurors from the assessment list for the year 1912 for use during the year 1913, and have knowledge of the facts as to the method in which said list

was made. That in making said list said Jury Commissioners did not fail to put upon the list any names of any persons appearing upon the assessment roll whom they believed to be a qualified juror as their names and qualifications appeared thereon. That some of the names that appeared upon the assessment list did not have attached thereto, or in any way in connection with said names, the qualifications for a juror. That names were left off that appeared upon the said list when it appeared to the said Commissioners from information, or their own knewledge, that any of said names were those of persons who were not qualified by reason of non-citizenship or not possessed of sufficient knowledge of the English language, or being over-age, or having any physical disability, or for other cause, were exempt from jury duty, but in all other cases where it appeared that there was no reason to believe otherwise that the said names were those of persons who were qualified to serve as jurors, the names were put upon the said list. That I have examined and heard read the Challenge to the Array, and would say that as to the names put in Jury Box No. 3, some of those that did appear upon the list, with their residence as being Rawlins, were known to have their residence more than five miles from the Court House, and such names were not put in Jury Box No. 3; and in other cases it was known and believed that persons that were upon the said assessment roll had either died or left Rawlins and no longer resided within the said five-mile limits. That there may be some names that do not appear in said Exhibit 'A' attached to said Challenge to the Array, the ballots for which, since being put in said box, have been destroyed by order of the court, or having served upon the jury at the last term of court are now in Box No. 2, and that the names now contained in Box No. 3 do contain all of the names of the qualified jurors whose qualifications were stated upon the assessment roll and who were believed to be qualified jurors and who are not exempt, and who resided within the five-mile limit, as a matter of fact, at least substantially."

There was no evidence before the court other than the defendant's verified challenge to the array and the exhibits thereto attached and made a part thereof, and the affidavit of Charles R. Watson, the Clerk of the Court, in opposition thereto. It is here claimed that the Jury Commissioners appear to have assumed that the right to claim an exemption from jury service was a disqualification under the statute, and erroneously acted on that assumption. By Section 983, Comp. Stat. 1910, the chairman of the board of county commissioners, the county treasurer and the county clerk of each county must meet at the county seat of each county at the office of the county clerk on the second Monday of January of each year for the purpose of making a list of persons to serve as trial jurors for the ensuing year. Section 984 provides that the officers present must select from the last assessment roll of the county, and make a list of the names of all persons whom they believe to be competent and qualified to serve as trial jurors as prescribed by Sections 978 and 979, but in making the list the officers shall omit therefrom the names of all persons known by them to be incompetent or not qualified to serve as trial jurors. It will be observed that the commissioners are not required to place the name of a person on the jury list who is personally known to them to be incompetent or disqualified to serve as a trial juror, notwithstanding what notation in that regard has been made on the assessment roll by the assessor in pursuance of the requirements of Section 1266. Such information so noted by the assessor is only advisory to the Jury Commissioners in the performance of their duties and they are not bound thereby as against their own personal knowledge. It is said by this court in commenting upon the present statute in State v. Bolln, 10 Wyo. 439, 70 Pac. 1, that the spirit of the law must be followed and a substantial compliance therewith is sufficient, and it is also said: "From the very nature of the duties imposed upon the Jury Commissioners, it is impossible to frame an accurate definition, applicable in all cases, of what would constitute a

substantial compliance with the statute. By the terms of the act, they are required to place upon the list only those whom they believe to possess the qualifications of jurymen. This language commits that question to their judgment and decision, and it is no ground for an attack upon a list so made up that others might disagree with them in regard to the qualification of persons whose names appear in the list or of others whose names have been omitted. But it is beyond controversy that an intentional disregard of the statute, by reason of an erroneous interpretation of its provisions, or otherwise, cannot be deemed a substantial compliance with it." The court further said: "It is a necessary qualification of a juryman that he must have been assessed upon the last assessment roll of the county, and no authority is conferred upon the Jury Commissioners to make a jury list except from the assessment roll. It is also necessarily implied in the statute that the jury list shall consist of the names on the assessment roll of all persons whom the commissioners believe to be. competent and qualified to serve. And we think a substantia' compliance with these requirements is necessary; that is to say, an assessment roll must have been made from which to select, the selection must be made from the names on such roll and must consist of substantially all whom they believe to be qualified. We do not hold, and there is no reason for holding, that the mere absence of a name or names from the list which should properly be upon it, or the presence of a name or names not upon the assessment roll, without proof that such errors occurred corruptly, would vitiate the list.".

Applying that rule to the record of this case, and without deciding whether the Jury Commissioners may properly omit from the list the names of persons known to be exempt but believed to be otherwise competent and qualified, we do not think there was a sufficient showing of a failure of a substantial compliance by the Jury Commissioners with and we see no such departure from the law as would warrant a reversal of the judgment on this ground.

There is no willful disposition shown by the commissioners to disregard the law. It is not shown that all of the names, or a considerable portion thereof, which were left off the list did not fall within the class as disqualified under or that there was not a substantial compliance with the statute nor is the good faith of the commissioners challenged. The commissioners were not held to a strict but only to a substantial compliance with the law in the performance of their duties.

It is the duty of the Clerk of the District Court, immediately after the jury list has been delivered to him, to prepare suitable ballots by writing the name of each person in the list with his place of residence and other additions, on a separate piece of paper of uniform size and properly folded and which he must deposit in "jury box number one." (Sec. 987.) The regular panel for the term is drawn in open court from this box as provided by Section 992, and, after the adjournment of the term, the names of those who attended and served shall be placed in "jury box number two." Section 996 is as follows: "The Clerk must keep, in addition to the two boxes specified in the last section, a third box known as and marked "jury box number three", in which he must deposit duplicate ballots containing the names with the proper additions of all persons selected and returned as jurors who reside within five miles of the city or town where a trial term or session of a court of record is held, pursuant to law." The duty of the Clerk of the District Court is ministerial. He deposes that jury box number three does contain all of the names of the qualified jurors whose qualifications were stated on the assessment rolls and who were believed to be qualified jurors and *who are not exempt* and who resided within the five-mile limits, as a matter of fact, at least substantially." The affidavit of the Clerk is not very clear as to this matter. If it be subject to the interpretation that he assumed to reject or withhold from jury box number three the names of persons solely on the ground that they were exempt then he exceeded his power. A person otherwise

qualified who is exempt from jury service may waive or claim his exemption. An exemption may be for any cause set forth in the statute. Such cause must be presented and a favorable ruling by the court invoked by the person claiming such exemption before the right accrues. (Sec. 980.) It is clearly not within the power of the Clerk of the Court to pass upon the exemption of one from jury service because to do so would be the assumption of a judicial power. The Clerk is limited in his duties in placing the ballots in the jury boxes to the list as furnished him by the Jury Commissioners. He cannot leave out names appearing on said list because he may believe some of them are not qualified or may be exempt.

2. The State, over defendant's objection, was permitted to introduce in evidence and read to the jury from the transcript of the stenographer's notes the testimony of three witnesses given in chief and upon cross-examination upon a former trial of this case. It was admitted that the transcripts were correct and that one of the witnesses had died since that trial. As a foundation for the admission of the evidence of the two other witnesses the affidavit of the Prosecuting Attorney was filed, setting forth that in ample time he had procured a subpoena to issue and placed it in the hands of the proper officer for service who had returned it with the officer's return indorsed thereon "not found"; that these witnesses had lived at Baggs, the place of the homicide, and that deponent had made diligent search and inquiry to locate and discover their whereabouts and that he had been unable to do so and to the best of his information they were somewhere in the State of California, and that their absence from the State and the trial was without his knowledge, consent or connivance. Upon this *ex parte* affidavit the court held the foundation sufficiently laid for the admission of the evidence given by the absent witnesses at the former trial. The evidence fairly supports the finding of the court as to the laying of the foundation and that being so the finding ought not to be disturbed. (Young v. People, (54

Colo. 293), 130 Pac. 1018, (March 3, 1913); People v. Ballard, (1 Cal. App. 222), 81 Pac. 1040.) It is, however, contended that defendant's constitutional right to be confronted by the witnesses against him was violated. The evidence was given upon a former trial of the same issue here presented and in the presence of the accused and he had a full and fair opportunity to and did cross-examine the witnesses. The defendant was then confronted by the witnesses in a legal proceeding between the same parties involving the same subject matter at issue in this case. The presence of the deceased witness could not be obtained and the other absent witnesses were shown to be beyond the jurisdiction and process of the court. Upon the record the defendant was deprived of no constitutional right by the admission of the evidence. (Secs. 1397, 1403, 1404, 1405,. Wigmore on Ev.; 16 Cyc. 1091; 5 Ency. of Ev. 896, 937.)

3. It is admitted that defendant was the marshal of the Town of Baggs at the time of the homicide, which occurred within the limits of that town and he claimed to have been acting within the line of his duties as prescribed by the ordinances of the town in attempting to arrest Bowen. He sought to introduce certified copies of certain ordinances under the certificate of the Town Clerk and the corporate seal of the town. The purpose of this offer as stated at the time being to show the nature and extent of his powers as marshal in the matter of the arrest of Bowen and, also, as bearing upon the question of intent This evidence was objected to by counsel for the State as follows: "We object to this, anyway, because this ordinace in our judgment would be contrary to law as to the duties or privileges of officers. In addition thereto this ordinance should be offered from the original books if it is offered. This is not a true certificate as shown by the records. I ask leave to file a counter affidavit." The court reserved its ruling until a later day during the trial, when the counsel having filed the counter affidavit which was objected to as incompetent and immaterial by the defend-

ant, the matter again came before the court. The object and purpose of the affidavit was to impeach the certificate of the Town Clerk as to the existence and correctness of the ordinance.

We do not approve, or in any wise, assent to the method here adopted in attempting to vitiate the certificate. The certificate of the Clerk, under the seal of the town, made the ordinance admissible in all courts without further proof. (Section 1587, Comp. Stat.) If the question rested here there could be but one conclusion reached (Lindsay v. City of Chicago, 115 Ill. 120, 3 N. E. 443), but it was orally admitted in the course of the trial that the "yea" and "nay" vote upon the adoption of the ordinance was not recorded on the journal as required by Section 1585, id. The Town Council was not inhibited from enacting such an ordinance, either by the Constitution or laws of the State. These ordinances had never been judicially determined to be invalid prior to the homicide nor is it shown that defendant had ever been informed or that he had any reason to believe that they were invalid, and the evidence shows that they were given him as a guide in the performance of his duty by the Mayor of the town.

In homicide, the defendant, when he submits himself as a witness, may be inquired of as to the motive or intent which actuated him when he fired the fatal shot or struck the fatal blow. When he answers that he believed he was acting in the line of his duty as a peace officer, as he did so answer here, what objection can there be in supplementing his evidence by proof of ordinances under which he claimed to have been acting whether the ordinances were properly enacted or not? Why should not the jury have this evidence to better judge of the surrounding conditions as to the intent or motive which actuated the defendant at the time of the homicide? It may be conceded that the ordinances were inadmissible for some purposes, but here they were offered as bearing on the question of good faith and intent of defendant in making the arrest and for

that purpose we are of the opinion that they were competent.

The defendant testified as a witness in his own behalf. He again produced and offered in evidence a copy of the ordinances given him by the Mayor when he was appointed and entered upon the discharge of his duties as Town Marshal. This offer was met with the objection which was sustained that the ordinances were incompetent, irrelevant and immaterial. In making this ruling the court said: "I will state and I wish it to go into the record, that the defendant may show what he regarded his duties to be in regard to making the arrest under the ordinances." An exception was reserved to this ruling.

It seems to have been the theory of the trial court that the defendant could justify under the general law, if at all, for making the arrest. The jury was instructed that the statute (Section 5902) provides that: "Whoever by any loud or unnecessary talking, hallooing, * * * * * interrupts or disturbs the peace of any community in this State or of any of the inhabitants thereof, shall be guilty of a breach of the peace and, upon conviction thereof, shall be fined not more than fifty dollars, or confined in the county jail not more than thirty days, or both," and if Bowen committed any such act in the marshal's presence it then became the positive duty of the latter to make the arrest. There can be no doubt as to the correctness of this instruction. Section 1355, Comp. Stat. 1910, provides: "It shall be the duty of every sheriff, marshal, policeman, constable and other peace officer promptly, and at the time and without warrant, to arrest any person who in his presence shall be found violating any law of the State of Wyoming, and forthwith to take such person before the nearest magistrate having jurisdiction of such offense, and forthwith before such magistrate to make complaint on oath of such person concerning such offense." By Section 1356 it is provided: "Any such sheriff, marshal, policeman, constable or other peace officer, who fails or refuses to arrest any person committing any offense

in his presence as above required, may be complained of, under oath, concerning such failure or refusal, before the District Court of the county within which he exercises his office, by any voter of such county, and if found guilty of such failure or refusal he shall, by the judgment of such court in such proceeding, be ousted from his office, and such office shall thereby become vacant."

It may be conceded that the ordinance is no broader in its terms than the statute, but, as bearing on the question of intent, they were admissible. The marshal claimed to have made or attempted to arrest Bowen for violating an ordinance, yet he was not permitted to prove the ordinance.

It is the general rule that a peace officer is not permitted to kill or maim one who is resisting or who does not peaceably submit to the arrest. The degree of force used by the officer is not permitted to go to that extent unless the culprit assaults the officer, when the right of self defense accrues to the officer. By Section 1355, however, it is made the duty of the marshal to arrest anyone who in his presence is found violating any law of the State. It will be observed that the statute is mandatory in its terms and the marshal who refuses or *fails* to effect the arrest of an offender who commits or is committing an offense within his view subjects himself to the penalty of removal. This is not a case where there was a peaceable submission to the arrest or where one who is running away from the officer is killed or maimed by the officer, but where there was evidence of resistance and assault and battery by Bowen upon defendant sufficient to go to the jury on the question of self defense.

In this connection the court instructed the jury that if the offense was not a penitentiary offense and for which the marshal was attempting to arrest the deceased and if such offense had not been in the presence of the peace officer or within his view *immediately before or at the time of such attempted arrest,* then the officer was acting illegally in attempting to arrest or restrain the deceased, and he will not be protected in any way as an officer would be in

attempting to make a lawful arrest. The court by a sep-
arate instruction told the jury that "immediate" or "imme-
diately" as used in the instructions, "does not necessarily
mean instantly, but means promptly and expeditiously. An
officer has a right to arrest without a warrant for an of-
fense committed in his presence, but in order to do so he
must act with such expedition and promptness as the cir-
cumstances will permit. He is not permitted to allow the
person accused to go off without attempting to apprehend
him, and then some time after during an interval within
which he might have procured a warrant, upon meeting
him again, arrest him." This instruction ignored the right
recognized by all the decisions that a peace officer may fol-
low and arrest a person who commits a misdemeanor in
view of such officer. It is true that he must resort to a
warrant when he abandons the trail, but that is not the
case here. The evidence tends to show that Bowen and
his companions came onto the street from the Jim Davis
saloon, where defendant had left them shortly before, and
in pursuance of a boast that he would do so, Bowen again
hollered, this time in view and hearing of the defendant,
who started toward the crowd for the purpose of making
the arrest and followed them to the Elkhorn hotel, where
they had gone for their supper and upon their leaving the
hotel the defendant arrested, or attempted to arrest, Bowen
as promptly and expeditiously as the safety of the condi-
tions would warrant without abandoning the trail.
Whether the disturbance at the time they came out of the
saloon was a continuation of the former disturbance or
not so much at least was in view of the defendant, whose
duty as marshal under the statute, required him to make
the arrest, and it may also have been his duty to have ar-
rested Bowen under the ordinances. We are of opinion
that as applied to the facts here the instruction was mis-
leading for, upon the facts, the defendant, as he had a right
to do, arrested Bowen and Salisbury after they came from
the hotel onto the street for hollering and making a dis-
turbance a short time before in his presence as they

emerged from the Davis saloon on their way to the hotel.

4. The defendant offered to prove threats of Bowen against him uttered prior to the homicide, which offer was objected to and rejected on the ground that such threats were not shown to have been communicated to the defend-. ant. Much of the testimony was directed to the question as to whether the deceased or defendant was the aggressor. The defendant testified that he believed the killing was necessary in self defense. Owing to its being dark the bystanders could not see plainly as to their movements. The defendant emerged from the encounter with a broken nose and some bruises on the back of his head as evidence of a powerful blow having been delivered, whether direct-ly delivered or received indirectly from falling is not clear from the evidence. There was at least evidence to go to the jury upon the question as to whether the shots were fired in necessary self defense and any evidence on the question as to who was the aggressor was material as bearing on that defense. This rule of evidence is uni-formly adhered to by the courts. In our opinion the trial court erred in excluding the evidence. (Sec. 110 Wig. on Ev.)

5. The court rejected defendant's offer to prove by sev-eral witnesses that he bore the reputation of being a pru-dent, discreet and cautious peace officer. This offer was rejected and the court limited the question of reputation to peace and quietude. In speaking of the use of evidence as to reputation and the kind of character that may be shown it is said in Section 59, Vol. 1, of Wigmore on Evi-dence, that the limitation of such use is imposed by the principle of relevancy, and to be admissible the character or disposition offered in evidence whether for or against the accused must involve the specific trait related to the act charged. In State v. Surry, 23 Wash. 655, 63 Pac. 557, the defendant was on trial on a charge of assault and battery while making an arrest. He offered to prove that he bore the reputation of a careful, conservative and con-scientious peace officer in the community in which he lived.

This offer was rejected. The court say: "Complaint is made of the action of the court in refusing to permit, the appellant to prove his reputation as a careful, conservative and conscientious peace officer in the community in which he resided, and it is insisted that the particular trait of character sought to be proved was in issue, and hence admissible in evidence. But we are unable to assent to that proposition: It is a general rule in criminal cases that evidence of the character of the accused, when offered by him, is relevant, and therefore admissible. But the character or reputation he is entitled to prove must always be such as would make it unlikely that he would commit the particular offense with which he is charged. (What. Cr. Ev. (9th Ed.) § 60.) In this case the appellant's character as a peace officer was not involved, but his character as an individual was involved in the offense charged against him, and therefore evidence of his reputation as a peaceable and quiet citizen in the community where he resided would have been admissible. But no such evidence was offered." This decision is criticized and denominated as unsound in the note to the text on Page 129, Vol. 1 of Wigmore on Evidence. In the case before us the question as to who was the aggressor and the defense involved the issue of self defense while in the Washington case the element of self defense was not involved. In Saye v. State, 99 S. W. 551, (50 Tex. Cr. App. Jan. 23, 1907) the accused was tried and convicted for negligent homicide charged to have been committed in making an arrest as a peace officer. He offered evidence to prove his general reputation in the community in which he resided for being a cautious and prudent officer which was rejected. This ruling was held error for which a new trial was granted. In that case the accused was a deputy sheriff engaged in connection with the Marshal of Milissa, to help discover and arrest some disturbers of the peace and in the attempt to arrest one of the disturbers the defendant's revolver was accidentally discharged and killed the deceased. The last case illustrates the relevancy rule and its application

so as to permit the admission of the general reputation of a peace officer for cautiousness and prudence in the performance of his duties, and upon the facts is not applicable here. There is no suggestion in this case that the homicide was the result of negligence. Upon the facts here the court's ruling was correct.

6. Over defendant's objection the court instructed the jury, by a paragraph in the second instruction, as follows: "If the defendant, Meldrum, killed the deceased, Bowen, with a deadly weapon, such as a gun loaded with gunpowder and leaden balls, by shooting the gun at a vital part of Bowen, without such provocation as was apparently sufficient to excite in the defendant an irresistible passion and such killing was not in lawful self defense, then you may find, if you are satisfied beyond a reasonable doubt from all the evidence, the killing to have been malicious, the defendant guilty of murder, and if such killing was deliberate and premeditated it will be murder in the firsst degree." The killing of a human being must be done purposely and maliciously to constitute murder in the second degree. Purposely as an element of the crime is not used which makes the instruction erroneous. The jury must find from the evidence beyond a reasonable doubt that all of the elements constituting the crime charged were present at the time of its commission before they are authorized to return a verdict of guilt, and anything less does not satisfy the law.

7. It is urged that the court erred in its definition of malice. The jury was told that, "Malice means ill-will, hatred, illnatured, wilfullness, a wilfull intention to do an unlawful act; a wilfull act done intentionally without just cause or excuse. It, also, denotes a state of mind from which acts are done regardless of others." While this definition might have been better and more carefully worded we do not understand how it could have been prejudicial.

8. Over defendant's objection the jury were told that, "In order to reduce a voluntary homicide to the grade of

manslaughter, it is necessary not only that there should be adequate cause to produce a degree of anger, rage, sudden resentment or terror, sufficient to render the mind incapable of cool reflection, but also that such state of mind did actually exist at the time of the homicide.  *  *  *  *  *  Thus, when a voluntary homicide takes place under the immediate influence of sudden passion, as explained above, and no excuse exists which will commonly justify or excuse the commission, then to determine whether such homicide is manslaughter or murder in the second degree, the true test is: Was there an adequate cause to produce such passion? If there was such adequate cause, the homicide will be murder in the second degree."

This instruction in so far as quoted does not state the law. It is claimed that the word "not" is omitted after the word "was" in the last sentence, but we cannot assume that the jury read the word into the instruction. It was the duty of the court to correctly instruct as to the law of the case and of the jury to take the law from the court. The defendant was not guilty of murder in the second degree upon evidence of an adequate cause to produce in his mind a sudden heat of passion at the time of the commission of the homicide. That would be tending to establish the crime of manslaughter but not murder in the second degree. So much of the instruction as quoted would have a tendency to impress the jury with the idea that the burden shifted to the defendant or, in other words, that it was his duty to prove himself not guilty when the truth is that in a criminal case in this jurisdiction the burden of proof never shifts. One who is on trial for a crime has a right to have the question of his guilt determined by the jury upon a fair and impartial examination, comparison and consideration of all of the evidence, both for the state and the defense. There was no presumption that the defendant was guilty of murder in the second degree upon proof if any that he committed the homicide upon a sudden heat of passion. The inherent vice of this instruction is apparent and it was error to give it; nor do we

think the error was cured by other instructions to the effect that the burden of proving guilt beyond a reasonable doubt rested upon the State for that burden never shifts.

9. Misconduct of the jury is assigned as error. It is unnecessary to discuss this question in view of our conclusion upon other grounds discussed as the acts alleged to be misconduct will in all probability not occur upon another trial.

For prejudicial error appearing on the face of the record and herein referred to the judgment will be reversed and a new trial granted.          *Reversed and remanded.*

POTTER, C. J., and BEARD, J., concur.