Haeold M. Spitzeb, J.
The People have applied for an order pursuant to CPL article 670 for permission to read into evidence the transcript of the testimony of Marie Bongiorno given in a previous trial, in lieu of the personal appearance of the witness. A hearing has been held by this court to determine whether the personal attendance of the witness is precluded because of illness or incapacity within the meaning of CPL 670.10. That section provides: “1. Under circumstances prescribed in this article, testimony given by a witness at (a) a trial of an accusatory instrument * * * may, where otherwise admissible, be received and read into evidence at a subsequent proceeding in or relating to the action involved when at the time of such subsequent proceeding the witness is unable to attend the same by reason of death, illness or incapacity ”.
The defendant under this indictment first came to trial in Supreme Court before the Hon. Paul J. Widlitz and a jury in October, 1971, at which time Mrs. Bongiorno testified and was fully cross-examined. The trial ended on October 19, 1971 in a deadlocked jury and a new trial was ordered. The witness was advised that she would have to again appear and testify. When that trial came on before another Justice of the Supreme Court and a jury in March, 1972, the witness, while testifying, allegedly took ill, with the result that a mistrial was declared.
Prior to the commencement of that trial, the District Attorney had moved for the same relief that he is now seeking and, after a hearing, his application was denied.
At the hearing before this court, testimony was received from Mr. Frank Bongiorno, husband of the witness, Dr. Anthony Rotondo, her family physician, Dr. Vincent Madonna, a heart specialist retained at the request of Dr. Rotondo, and from Dr. Michael S. Rost, a court-appointed internist.
Mr. Bongiorno related that he returned to his home on November 11, 1969, following the alleged robbery which is the subject of this indictment, and found his wife in an unconscious condition, after which she appeared to be very tense, nervous and upset. He was present when his wife testified at the trial before Judge Widlitz and she appeared visibly nervous. She was informed that she would have to testify at a second trial and, in November, 1971, prior to that trial, she collapsed at a friend’s house and complained of severe pains and numbness in her lower extremities. That she spent two weeks thereafter in the hospital. He was present at the second trial and he observed that she *811 was pale and that .she collapsed and complained of no feelings in her legs and extreme chest pains. That whenever in the past the case has been discussed, his wife appeared to be emotional, highly nervous and upset. Since her release from the hospital in March, 1972, the case has not been discussed with her and she has appeared to be in excellent health.
Dr. Anthony Rotondo testified that he has been Mrs. Bongiorno’s family physician for approximately 10 years. That in November, 1971 she was admitted to Nassau Hospital for anxiety and chest pain. She was discharged approximately two weeks later with a diagnosis of severe anxiety syndrome and anemia. Dr. Rotondo next saw her approximately two weeks prior to her scheduled court appearance for the second trial. At that time his diagnosis was that she suffered from angina pectoris probably caused by emotion and anxiety. Dr. Rotondo sat in court while Mrs. Bongiorno was testifying at the second trial, and was with her during a recess, at which time she apparently passed out. She complained of chest pain and her limbs felt cold: She was clammy, had a faint perspiration on her forehead, her pulse was weak and her heartbeat was rapid. Dr. Rotondo concluded that she had suffered an angina attack. Oxygen was administered and she was taken by ambulance to Nassau Hospital. About an hour later she felt better and the following morning she looked “ pretty good ”. Dr. Rotondo stated that it was his opinion that a repetition of that episode would occur if she were again called upon to testify in court. He also testified that although she had suffered no organic heart damage, such damage in his opinion could occur in the future depending upon the intensity of the attack. He last saw her on March 26,1972.
A few days after Mrs. Bongiorno was taken to Nassau hospital, in March, 1972, Dr. Vincent Madonna, a heart specialist, was called in for consultation.- He examined her and received a history of chest and left arm pain, light-headedness, numbness of the lower extremities, mouth and chin areas and breathlessness. The specialist found the electrocardiogram and CPK to be normal and found no evidence of heart damage and stated that she had not suffered a -heart attack. He could not say whether she did or did not have an angina condition since he did not perform the entire series of tests required for such a determination. Dr. Madonna’s diagnosis based on the history that he obtained, was that she had suffered a hyperventilation syndrome and acute anxiety due to her appearance at court. He stated that a hyperventilation syndrome occurs generally when *812 someone is acutely upset. The doctor further stated that a person with Mrs. Bongiorno’s complaints might suffer another such attack if again called upon to testify in court. He stated that a ‘ ‘ hyperventilation syndrome occurs generally when someone is acutely upset and the patient breathes heavier and faster than normal, and as a result, they breathe out too much carbon dioxide, and this produced a change in the acidity of blood. The blood becomes more alkaline actually, and as a result, you find disturbances in the muscle function. The muscles tighten up and disturbance of the nerve function to the extent that they get numbness of the extremities around the mouth, and they also become breathless because the respiratory muscles tighten up because of this disturbance of blood and acidity, and the intercostal muscles, which have to do with breathing, tighten up, and the end stage is tetany, when their hands become like this [indicating], and actually faint from this. I have seen it several times. That is true of hyperventilation syndrome.”
Dr. Michael S. Rost testified that in his opinion Mrs. Bongiorno had suffered an acute anxiety reaction known as hyperventilation syndrome during her court appearance in March, 1972. He could not state that she would not have a similar episode if called upon again to testify, although sedation might alleviate or prevent such an attack. This was not a heart condition and did not pose any danger to her life. His examination did not reveal any clue to suggest a probable organic illness.
In Attorneys’ Textbook of Medicine, Gordy-Gray, hyperventilation syndrome is discussed in volume 3A (par. 90.56 [4]):
‘ ‘ The hyperventilation attack occurs episodically as an accompaniment of severe anxiety which may be either acute or chronic. It presents a very characteristic clinical picture and yet is often unrecognized for what it is. * * * Situations which precipitate or provoke anxiety usually bring on such attaeks.- * * * The attack may last 10 to 15 minutes or even longer, and may occur only occasionally or several times a day. * * * The combination of tightness and pressure in the chest, inability to breathe, precordial pain and palpitation of the heart frequently leads to conviction by the patient that he has a serious heart disease and it is difficut to assure him otherwise even after negative tests. * * * There is no evidence that even repeated attacks of hyperventilation cause any permanent changes in the brain.”
This court finds that the witness suffered from acute anxiety which culminated in a hyperventilation syndrome at her last appearance on the stand. There is no evidence that she is suffer *813 ing from any heart condition or any organic aliment. The illness referred to in CPL 670.10 may be either physical or mental. Undoubtedly, the witness does have an “illness ” insofar as she appears to be prone to acute anxiety which may result in a similar hyperventilation syndrome unless the cause of the anxiety is removed.
The evidence before me does not indicate that such an attack, regrettable as it may be, would result in a serious injury nor would it involve any risk to her life. The court recognizes that the prospect of suffering such an attack can be frightening, and it sympathizes with the desire of the witness and her husband to avoid the ordeal involved in another court appearance. However, every defendant has the constitutional right to have witnesses against him produced in court and cross-examined in the presence and under the scrutiny of the jury. The cold record of former testimony may only be substituted when excusing factors are present. When illness is relied upon, it must be satisfactorily shown that the illness is a serious one.
As stated in People v. Lombardi (39 A D 2d 700, 701): “ It cannot be said on this record that under no reasonable circumstances could the court possibly have been satisfied had Kristen Diaz been required to appear and testify in person that her mental and physical health would have been seriously jeopardized, if indeed a further and perhaps successful attempt at suicide would not result. ’ ’ (italics added).
“ Serious Injury ” is. defined in article 10 of the Penal Law as follows: “ ‘ Serious physical injury ’ means physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ. ’ ’
In Black’s Law Dictionary (Rev. 4th ed.) “ Serious Illness ” is defined as follows: “ In Life Insurance: An illness that permanently or materially impairs or is likely to permanently or materially impair the health of the applicant. Not every illness is serious. * * * It is not sufficient that the illness was thought serious at the time it occurred or that it might have resulted in permanently impairing the health.”
It has not been satisfactorily shown to this court that the personal attendance of Mrs. Bongiorno is precluded because of an illness or incapacity within the meaning of OPL 670.10.
Accordingly, the application is denied.