**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas BELL, Defendant-Appellant.**

**No. 1147, Docket 74–1391.**

United States Court of Appeals,
Second Circuit.

Argued June 27, 1974.

Decided July 17, 1974.

David M. Brown, Buffalo, N. Y. (Jaeckle, Fleischmann & Mugel, Buffalo, N. Y., on the brief), for defendant-appellant.

Kenneth A. Cohen, Asst. U. S. Atty. (John T. Elfvin, U. S. Atty., W. D. N. Y., on the brief), for plaintiff-appellee.

Before MOORE and FEINBERG, Circuit Judges, and PALMIERI, District Judge.*

FEINBERG, Circuit Judge:

Thomas Bell appeals from a conviction of attempted bank robbery, 18 U.S.C. § 2113(a), after a jury trial before Chief Judge John T. Curtin in the United States District Court for the Western District of New York. Appellant was sentenced on March 18, 1974, and remanded to the custody of the Attorney General pending a study and recommendation under 18 U.S.C. § 4208(b). The principal issues on appeal concern the defense of insanity raised at the trial. For reasons stated below, we affirm the judgment of conviction.

---

* Of the United States District Court for the Southern District of New York, sitting by designation.

1. E. g., not only was Bell identified by the bank employees (the testimony of Sandra

## I

In October 1973, an attempt was made to hold up the Marine Midland Bank in Buffalo, New York. A man handed a note to a teller, which read "Give me all your money or I kill you." That employee, along with Sandra Witmer, another teller, left the teller's cage and told the Assistant Manager what had occurred. He immediately called the police, who arrived a few minutes later. In the meantime, the man who passed the note had left the bank. Appellant was observed a short distance away and was questioned by an officer. He was then taken to the bank, identified by the tellers and placed under arrest.

At trial, Bell claimed that he was not the would-be robber and also raised the defense of insanity. The evidence that he was, in fact, the culprit was overwhelming,[1] and on appeal Bell claims no insufficiency in this respect. Appellant does argue, however, that the evidence failed to establish beyond a reasonable doubt that he was sane on the date of the attempted holdup. He also asserts that the judge should have declared a mistrial because of the testimony of the government psychiatrist and that the reading of the prior testimony of Sandra Witmer constituted reversible error.

## II

There can be no doubt, after reading the record, that appellant Bell is a disturbed man. Through the testimony of appellant's expert witness, Dr. Michael J. Lynch, a psychiatrist, the jury was advised that appellant had been confined in psychiatric hospitals at various times over a period of many years. As late as 1972, he had received electric shock treatment at the Buffalo State Hospital. As will be seen below, he has

Witmer is treated below) but evidence was given that the only fingerprints found on the note were his.

had numerous brushes with the law. However, the issue before the jury was not whether appellant had suffered psychiatric problems. It was whether, at the time of his alleged commission of the crime,

> as a result of mental disease or defect he lack[ed] substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

United States v. Freeman, 357 F.2d 606, 622 (2d Cir. 1966). That test was fairly put to the jury by Judge Curtin, and the defense made no objections to the charge. The jurors' request for additional instructions and other guidance from the court [2] shows that they understood the significance of the matter before them. And, contrary to appellant's assertion, the testimony of the government psychiatrist, Dr. Richard F. Miller, did create a jury issue. Dr. Miller testified that appellant suffered from alcoholism and had an antisocial personality, but concluded that he was able to appreciate the wrongfulness of his conduct and to control it. The picture of 12 lay jurors listening to conflicting psychiatric evaluations and then deciding which is correct may raise fundamental questions, but it is the way we resolve such issues, at least for the present.[3] Moreover, there is less chance of juror confusion in a case like this where the government psychiatrist suggested that Bell knew the legal advantages of appearing to be mentally ill—a matter on which laymen can use their common sense. In any event, as in United States v. Bohle, supra, note 3, on this record the insanity defense was a question for the jury.

Even so, appellant argues, a new trial is necessary because Dr. Miller's testimony unfairly introduced prejudicial evidence into the case. Dr. Miller was called as a rebuttal witness by the prosecution. In the course of his direct testimony, he stated that he had reviewed various medical records and defendant's arrest record. The judge immediately instructed the jury that the doctor's testimony was offered only with respect to the defendant's mental capacity and criminal intent on the date of the crime. When Dr. Miller—outside the presence of the jury—told the judge that his diagnosis of the defendant was related to his prior arrest record, the judge explained to him the possible prejudice involved and directed him, whenever possible, to make his diagnosis without reference to this record. Thereafter, the doctor did not again mention that Bell had been arrested. Appellant complains, however, that the doctor did refer to a number of instances of defendant's criminal conduct in support of the diagnosis, e. g., Bell's use of drugs, his theft of household articles and his participation in a mugging. These were mentioned in a letter from the Acting Director of one hospital, where defendant had been confined, to the head of the Department of Psychiatry at another hospital in which he was given treatment.

■■■ Under the circumstances, no reversible error occurred. Mention of appellant's prior arrest record was minimal and was promptly corrected by Judge Curtin. The references to his antisocial activity were contained in the medical records reviewed by Dr. Miller, and were part of the basis for his opinion. That some of it was criminal does not insulate it from mention in this context. Cf. United States v. Kohlman, 469 F.2d 247, 250–251 (2d Cir. 1972); Proposed Federal Rule of Evidence 404(b), H.R. 5463, 93d Cong., 2d Sess. (1974). The judge properly instructed the jury that it could not consider this evidence as indicating a propensity to commit the crime charged. Of course, there is an

---

2. Several times during their deliberations, the jurors asked the court to let them view certain items in the jury room or listen again to testimony. Notably, on the insanity question, the jurors requested appellant's medical records from 1972 on, as well as testimony about them. They also asked the judge to repeat his charge on the effect of drugs or alcohol on criminality.

3. See authorities collected in United States v. Bohle, 475 F.2d 872, 875 n. 3 (2d Cir. 1973).

element of unreality in all of this, but that is inherent in the jury process which depends on the assumption that the jurors will follow the instructions given by the judge. The alternative here would be to allow the defendant to claim insanity and offer the expert evidence he chooses but to restrict the Government in presenting the basis for the contrary opinion of its own expert. This course simply does not make sense. Although we have found no precedent squarely in point, we feel that Judge Curtin handled an obviously difficult problem in a proper and fair manner, accommodating the interests of both defendant and the Government.

Finally, appellant claims that the Government should not have been allowed to read to the jury the prior testimony at a suppression hearing of Sandra Witmer, one of the identifying witnesses. Mrs. Witmer was not present at trial because of illness, as the judge specifically found. So far as the record in the court below reveals, appellant never contested the genuineness of her sickness or raised any issue as to its duration—matters which we would in any event be less equipped than the trial court to determine. 5 Wigmore, Evidence § 1406, at 159 (3d ed. 1940). Here, however, Bell relies on Peterson v. United States, 344 F.2d 419 (5th Cir. 1965), which held that the Government could not use former testimony when a continuance of several months would have permitted a witness suffering a difficult pregnancy to testify in person after the birth of her child.

 Although appellant argues to us that in a case of temporary illness, "the convenience to the Government must give way to the rights of the accused,"[4] we think that in the first instance it is up to the district judge to decide if the witness is truly "unavailable"—a finding that we would not be quick to overturn.[5] Once this determination is made, the law is clear that prior testimony may be admitted when given—as here—in court, under oath, subject to cross-examination and on the very issue (identification) for which it was offered at trial. Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); California v. Green, 399 U.S. 149, 165–166, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); Barber v. Page, 390 U.S. 719, 722, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). See United States v. Singleton, 460 F.2d 1148 (2d Cir. 1972), cert. denied, 410 U.S. 984, 93 S.Ct. 1506, 36 L.Ed.2d 180 (1973); Proposed Federal Rule of Evidence 804(a)(4), supra ("unavailability" includes "then existing physical or mental illness or infirmity"); 804(b)(1). We disagree with *Peterson*, supra, if indeed it meant to imply that in every case where a witness is ill but will sometime recover, the prosecution must suffer a continuance (in this instance, one of several months; see note 5 supra) or forego entirely the use of the evidence.[6] Under the circumstances presented here, we believe that the judge's decision was proper.

Judgment affirmed.[7]

---

4. Brief for Appellant at 13.

5. Here the judge's finding is amply supported by the record, which contains a doctor's letter to the effect that Mrs. Witmer had recently undergone surgery and would not be able to testify for at least two and a half months.

6. We note, too, that *Peterson* predated several important Supreme Court cases on the

confrontation issue. See, e. g., Mancusi v. Stubbs, supra; California v. Green, supra.

7. Our task on this appeal would have been considerably lightened had the parties seen fit to refer to pages of the record or the appendix in their statements of fact in the briefs. (Appellant gave no citations at all while appellee in large part adopted appellant's factual narrative.) See Fed.R.App.P., Rule 28(a)(3), (e).