UNITED STATES of America, Plaintiff,

v.

Anthony LaFATCH, Defendant.
No. CR73-602.

United States District Court,
N. D. Ohio, E. D.

Oct. 2, 1974.

Edwin J. Gale, Strike Force, North Olmsted, Ohio, for plaintiff.

James C. Herndon, Robert W. Briggs, Akron, Ohio, for defendant.

## SUPPLEMENTAL MEMORANDUM OPINION

LAMBROS, District Judge.

The defendant was indicted on November 1, 1973, for possessing a firearm in violation of 18 U.S.C. App. § 1202(a)(1), he having previously been convicted of a felony. On July 25, 1974, the matter came on for trial by jury.

During the presentation of the Government's case, a key defense witness, the wife of the defendant, suffered what appeared to be a heart attack. She was hospitalized immediately. Counsel met with the Court and it was decided to proceed with the case and await the medical decision. On August 1, the defense was ready to present its concluding witness but Mrs. LaFatch's physician refused to allow her to appear in Court. The jury was released and asked to return the next day. The defense attorneys then raised the possibility of videotaping Mrs. LaFatch's testimony and presenting it in that manner. The Court was aware of the problems associated with such procedures, since prior to the trial, this Court had become involved in an experimental program which evaluated the utilization of videotape recording in the federal courts. There was videotape equipment provided by the Federal Judicial Center available in the Courthouse and it had been used by the Court in several civil cases, both for taping the actual proceedings in a trial (Elizabeth Smith v. City of East Cleveland, No. C 73–299) and in taping the witnesses for later viewing by the Court (Arnold v. Ballard, No. C 73–478).

The Court agreed, provided that the Government would stipulate to its admissibility and that steps would be taken to minimize the hospital setting; no doctors were to be present, only the head and shoulders of Mrs. LaFatch would be shown, and no reference to her condition was to be made. The Court had volunteered the services of court personnel in the taping, but was assured by the defense counsel that a court reporting firm had equipment compatible to the court's equipment and an operator trained in its use. Upon agreement of the Government and the establishment of these conditions, the approval of the Court was given. At 8:30 a. m., August 2, the taping began. It was completed within one hour. Counsel arrived at the Court around 10:30 a. m. and the concluding defense witnesses presented, with the exception of Mrs. LaFatch. Over the noon break the Court and counsel previewed the tape and dealt with the objections raised. Then at 2:00 p. m., the tape was presented to the jury.

This opinion supplements the oral rulings of the Court and states the basis for the Court's decision to allow these somewhat unusual proceedings.

Rule 15(a), Federal Rules of Criminal Procedure, sets out the requirements for allowing a witness in a criminal case to be deposed, which are that upon motion of the defendant, the Court may allow a deposition to be made if it finds that the witness may be unable to attend the proceedings, that the testimony is

material and that deposing the witness is necessary to prevent a failure of justice. The situation which must exist before the deposition may be introduced at trial are specified in Rule 15(e), which in relevant part provides for introduction in instances in which a witness is unable to attend or testify because of sickness or infirmity. Pursuant to Rule 15(d), the deposition may be taken in any manner which meets the requirements of the Federal Rules of Civil Procedure. In the Civil Rules, Rule 30(b)(4) is controlling, and provides that:

> The Court may upon motion order that the testimony at a deposition be recorded by other than stenographic means, in which event the order shall designate the manner of recording, preserving, and filing the deposition, and may include other provisions to assure that the recorded testimony will be accurate and trustworthy. If the order is made, a party may nevertheless arrange to have a stenographic transcription made at his own expense.

Prior to 1970, the stenographic recording of testimony had reached an unchallenged level of acceptance. See cases cited 23 Am.Jur.2d Depositions and Discovery § 1. No matter how vital the issues or complex the presentation, the recording of testimony at depositions or trial was accomplished by a lone court reporter, and the version of the events which the reporter subsequently producer was not susceptible of contradiction. And, generally, the expertise of the court reporters was deserving of this respect.

It took an amendment to the Rules in 1970 to open the door for recognition by the courts of the technological developments which had been made in the 1960's. The change was the adoption of the present language of Rule 30(b)(4) which expressly authorizes the use of other techniques in the taking of depositions.

The reluctance with which the courts greeted the change was understandable in view of the success which the existing system enjoyed. And, in a more romantic sense, it was yet another instance in which a machine replaced a person, since the skill needed to operate tape recorders and videotape equipment is minimal when compared with the talents essential to stenographic court reporting. Moreover, the Court would concede that many of our space age developments contain as much potential for abuse and destruction as they do for advancement, particularly the lie detector and the listening device.

But to allow unwarranted concern to impede change is wrong. The ear of the tape recorder is as accurate as that of the court reporter and the combined audio and visual capability of a videotape machine surpass the written transcript when it comes to analysis of a witness.

As Judge Frankel of the Southern District of New York observed in Marlboro Products Corp. v. North American Philips Corp., 55 F.R.D. 487 (1972),

> We are entitled to insist, however, that quarrels about the recording device be kept within bounds of fairness and realism. It has been urged that there is need for devices elaborate enough to make a faithful record of heated episodes when people shout all together from different parts of the room. With all respect to the cherished court reporters who serve so magnificently in this building, the premise of this proposal is a fantasy. All of us who work in courtrooms have seen the harried reporter throw up his hands in despair and not even pretend to record (and who cares?) bouts of simultaneous squawking by judges, lawyers and others. We ought not to test and destroy the new rule by standards of needless and nonexistent perfection. *Marlboro*, at 490.

There have been several reported cases, in addition to *Marlboro*, wherein federal district courts sanctioned the use of electronic recording devices at depositions (Lucas v. Curran, 62 F.R.D. 336 (E.D.Pa.1974), Westcott v. Neeman et al., 55 F.R.D. 257 (D.Neb.1972), and Kallen v. Nexus Corp., 54 F.R.D. 610 (N.D.Ill.1972)) and at least one case in

which it was recognized that a videotaped deposition might be used at trial, Carson v. Burlington Northern Inc., 52 F.R.D. 492 (D.Neb.1971).

The Court was also mindful of the numerous cases in which films or tapes of the defendant had been used in criminal trials, as in bank robbery or drunken driving cases. And at least one study has recommended the videotaping of the entire criminal trial before presentation to the jury, See The Ohio State University Program for the Study of Crime and Delinquency Standards and Goals Comparison Project, Final Report; Courts, Vol. II, Recommendation 4.2 (1974).

With all these factors in mind, the Court analyzed the situation which confronted it on August 1, 1974. The Government's case had been concluded and the defense was nearly through with its evidentiary presentation. The trial had already been delayed by numerous unrelated events. If the Court waited until Mrs. LaFatch was ready to appear in Court, it might well be several weeks before the case went to the jury for decision; a mistrial was a very real threat. The use of a written deposition is at best a poor substitute for the live testimony of a witness. Having two lawyers read the various roles is extremely tedious and, frankly, boring, even if the deposition is short. Moreover, there would be the delay required to allow the testimony to be transcribed.

When these factors were weighed against the advantages of videotape, i. e., an opportunity for the jury to watch the witness testify and the instant replay capability, the Court found that the procedures ultimately employed were not only entirely proper but in fact the best solution possible.

The Court hopes that other judges faced with similar situations will be able to utilize the techniques that proved effective here. As the Court of Appeals, for the Eighth Circuit observed in approving the use of a videotaped interrogation:

We must recognize that the capacity of persons to observe, remember and relate varies as does this ability and desire to relate truly. For jurors to see as well as hear the events surrounding an alleged confession or incriminating statement is a forward step in the search for the truth. Hendricks v. Swenson, 456 F.2d 503, 507 (1972).

It is so ordered.