**Sammy Dean MARTINEZ, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 5212.**

Supreme Court of Wyoming.

May 22, 1980.

Richard H. Honaker, Public Defender, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, and Martin McClain, Student Intern, Laramie (argued), on brief for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Berry F. Laws III, Legal Intern, Cheyenne (argued), on brief, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

A jury found defendant-appellant guilty of violating § 31-11-102, W.S.1977, unauthorized use of a motor vehicle. He was sentenced to imprisonment for not less than

two years and not more than four years. He appeals from the judgment and sentence, alleging the commission of error in allowing the use of a deposition in lieu of the appearance of the witness at the trial.

We affirm.

Two police officers answered a disturbance call at the Lakeway Bar in Green River in the early morning hours. They left their police car in the bar parking lot with the motor running. When they returned to the parking lot a few minutes later, the car was gone. Several hours later, it was found abandoned in a ditch.

Trial testimony reflected that Pam Terwey and two companions left the bar at about the time the police arrived. The two companions returned to the bar to talk to the police, but Pam Terwey remained in the parking lot. Appellant left the bar after the police arrived; and twenty to thirty seconds later, loud revving noises of a car engine were heard, and noises of tires grabbing the pavement were heard. No one else left the bar during the pertinent time. The two police officers and one of Pam Terwey's companions saw no other person in the vicinity of the bar at the time.

The issues on appeal concern the deposition testimony of Pam Terwey. A few hours after she and her two companions left the bar, they were stopped at a roadblock. She then stated that she had seen appellant take the police car. On July 10, 1979, the prosecution moved the court for an order to take her deposition for use at the trial in lieu of her appearance inasmuch as she had recently sustained a skull fracture and other injuries and because her doctor had advised that she not be brought to court for at least six weeks. The trial court granted the motion and ordered the deposition to be taken at the residence of the witness. The deposition was taken on July 13, 1979, but it was taken at the courthouse.

In her deposition, the witness testified that the only advice given her by her doctor was "not to run around, * * * not to walk around, stay at home." With reference to the testimony expected by the prosecution to the effect that she had seen appellant take the car, she acknowledged that she had so told the police but changed her statement and said that she did not see him do so. The pertinent deposed testimony was as follows:

On direct examination:

"Q. After this happened, after he passed you what happened then?

"A. I don't know. I didn't see. I was facing the other way.

"Q. Did you notice the police car missing?

"A. Yeah, after about—after I turned around about three minutes later.

"Q. Had anyone else come out of the Lakeway at that time?

"A. No.

"Q. Had you seen anyone else in the area?

"A. No.

＊　　＊　　＊　　＊　　＊　　＊

"Q. Did you talk to Detective Jaramillo that night?

"A. Yeah.

"Q. What did you tell him?

"A. I told him—I don't know.

"Q. Do you remember what you told him, approximately?

"A. No, not really.

"Q. Was that conversation recorded?

"A. Yeah.

"Q. Did Detective Jaramillo ask you to make an identification of an individual at the sheriff's office?

"A. Yeah.

"Q. How did that take place?

"A. What do you mean how it took place?

"Q. Where were you and where was that individual and where was Detective Jaramillo?

"A. We were in the sheriff's office, the sheriff's thing over there.

"Q. How close were you to the individual?

"A. When?

"Q. When you identified him?

"A. I don't know.

"Q. Was he standing in front of you?

"A. Yeah.

"Q. Did you identify him?

"A. Yeah.

"Q. Was that individual the same one that you saw take the car?

"A. I didn't see him take the car, but it was the same one I seen at the Lakeway.

"Q. That passed you on the corner?

"A. Yeah.

"Q. Is this the man you saw that night (walking over to an individual sitting in the room.)

"A. It's the one I seen in the bar."

On cross-examination:

"Q. Okay. What happened next? You stated that the police officers are in there talking and you are outside and Sam came out?

"A. Yeah.

"Q. Okay. What happened then?

"A. Then he came out and he walked past, and I was facing this way (indicating) towards the door.

"Q. And he walked past you?

"A. Yeah.

"Q. Did you hear something leave?

"A. No.

"Q. And you are within how many feet? I think that is about fifteen feet.

"A. Probably about five feet.

"Q. Of the car?

"A. Oh, it was probably about two feet away from me.

"Q. And you don't hear the car leaving at that time?

"A. No.

"Q. What did you do then?

"A. After about three minutes I went back in and then we left.

    \*     \*     \*     \*     \*     \*

"Q. What happened when you talked to Mr. Jaramillo?

"A. He just asked—

"Q. What did he ask you?

"A. About what happened there and—I don't know.

"Q. Do you remember what you told him that night?

"A. Yeah.

"Q. Is it any different than what you have said today?

"A. Yeah.

"Q. In what respect?

"A. I don't know.

"Q. Well, you know it is very important not only to the defendant but also to the State. Do you know what the differences were in the story?

"A. Yeah.

"Q. What are they?

"A. I told him that I seen him.

"Q. That you had seen whom?

"A. I seen him take the car.

"Q. But you are saying here now that you didn't see him?

"A. Yes.

"Q. Okay. Were you telling the truth then or are you telling the truth now?

"A. I am telling the truth now.

"Q. You never actually saw Sammy take the car?

"A. No.

"Q. You had your back to the—

"A. I was facing this way (indicating).

"Q. You were walking away. You had your back to him?

"A. Yeah.

"Q. You didn't hear a car leave?

"A. No."

Appellant then filed a motion for an order denying the use of the deposition at trial. He argued that a showing had not been made of the necessity for using the deposition, and that he was entitled to personal confrontation and examination of the witness before the judge and jury. The court did not rule on the motion until it allowed its use at the trial which was held on July 17, 1979.

However, before the deposition was offered as evidence at the trial, Officer Lance Barr testified that he had a conversation with Pam Terwey and two other bar patrons at a roadblock which had been set up. He testified for the prosecution in part as follows:

"Q. What did you ask them?

"MR. BATH: Your Honor, I object as he's asking for hearsay.

"THE COURT: He may answer the question when he asked them.

"Q. (By Mr. Reese) What in fact did you ask those three individuals?

"A. I asked if they knew who took the police car.

"Q. And what did you do as a result of that conversation?

"A. I got on the radio to Sergeant Carter and told him what I'd heard.

"Q. And what did you tell him to do?

"A. I told him to pick up and hold Sammy Martinez.

"Q. What else did you do as a result of that conversation?

"A. I asked the three individuals if they would come to the Sheriff's Office and talk to a Detective and give a statement."

On cross-examination:

"Q. Did any of the three people indicate to you they had seen Sammy Martinez drive away with that car?

"A. Yes, they did.

"Q. Which one?

"A. Pam, the girl.

"Q. You are aware, are you not, that I took Pam's deposition—at least the State took her deposition—and I was present?

"A. That's what I heard.

"Q. That we have her deposition, a sworn statement, under oath, cross examination, and all that, and she states that she did not see anyone drive that car away?"

At this point of the trial, appellant apparently had decided that it was favorable to him to have placed before the jury the deposition recantation by Pam Terwey of her statement that she had seen appellant take the car. Nonetheless, during the following redirect examination of Officer Barr, he objected as indicated:

"Q. When you talked to Pam Terwey at the road block, what did she say to you?

"MR. NORDSTROM: We object, Your Honor.

"MR. BATH: Yes, we do, Your Honor. It is hearsay and particularly in light of the fact that they don't intend to call Pam Terwey here in person to this trial. They planned to use her deposition at trial, but they don't plan to call her.

"MR. JAMES: Your Honor, they brought that up and asked what Miss Terwey said to the officers here. I think we have got the right to cross examine and make clear what she did say and also res gestae in exception to the Hearsay Rule. It happened right around the time that the car was actually taken, so that Pam Terwey's statement made at that time would probably be more reliable than they were under deposition.

"MR. BATH: We are put in the position that if they don't intend to call her to trial, to not have an opportunity to cross examine, because the deposition was taken Friday which has no indication of what we're talking about here today.

"THE COURT: The fact remains that the Defense brought out what she told him before in their direct examination.

"MR. BATH: That's right, to protect herself is the same reason as our objection.

"THE COURT: Well, if you brought it out, I think they have a right to persue [sic] it. You may continue."

Barr then testified that Pam Terwey told him she had seen appellant "come out of the bar, get in the car and drive off," and that she "identified the clothes that he was wearing."

One of Pam Terwey's two companions that night, Charles Leasor, testified *without objection* that Wayne (the other companion) told him that "Sammy had taken the car," and that Pam Terwey also told him that "Sam had taken the car."

Although at that point in the trial it would seem that the prosecution would have more to lose than to gain from use of Pam Terwey's deposition, the prosecution then offered it into evidence. And although it would seem that appellant would be benefited by Pam Terwey's denial of the truth of her previous statement that she had seen appellant take the car, appellant did not subpoena her as *his* witness and

attempt to have her present at the trial in that capacity, and he again objected to the introduction into evidence of the deposition containing such denial. The deposition was, nonetheless, admitted and it was read to the jury.

Thereafter, *without objection*, Detective Joe Jaramillo testified that he took a "taped statement" from Pam Terwey on the night the police car was taken, in which statement she gave him a description of "what she observed." He further testified that she made a personal identification of appellant "as having taken the vehicle."

Appellant framed the issues on appeal as: "1. Whether, under Rule 17(a) of the Wyoming Rules of Criminal Procedure, an insufficient showing that a witness is unable to attend a trial is made by the bald assertion that a doctor has advised that the witness not be brought into court for at least six (6) weeks.

"2. Whether, in a criminal case, there was insufficient justification for a trial court, consistent with the U. S. Constitution, to permit the prosecution to use a material witness's deposition in place of her live testimony at trial, when the prosecution merely asserted that the witness's doctor advised that she not testify in court for at least six (6) weeks."

### BURDEN OF PROOF UNDER RULE 17(a), W.R.Cr.P.

Appellant recognizes that the propriety of the taking of a deposition of a witness in a criminal trial and the conditions under which such can be taken are set forth in Rule 17(a), W.R.Cr.P.:

"(a) * * * If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an indictment or information may upon motion of any party and notice to the other parties order that his testimony be taken by deposition * * *."

■ Appellant did not object to the *taking* of the deposition. It was not until after it was taken that he objected to its *use*. His objection to the use of the deposition was founded on the contention that Pam Terwey *was able* to attend the trial and testify in person. It is noted that the only showing required by Rule 17(a) for the taking of a deposition with respect to the ability to attend the trial is that the witness "*may be* unable to attend" or *may be* "prevented from attending." The recitation by the prosecution that Pam Terwey received a skull fracture and other injuries and that her doctor advised that she not be brought to court for at least six weeks was sufficient to satisfy the requirement of Rule 17(a) relative to a showing that the witness *may be* unable to attend the trial when no objection or counter recitation to the taking of the deposition was made by appellant.

Appellant does not contest the existence of the other requirements set forth in Rule 17(a) for the taking of the deposition. Appellant refers to Pam Terwey as a "material witness" and recites "the importance of Pam Terwey's testimony." The materiality of such testimony as such appeared at the time of the taking of the deposition is evidenced by the fact that she had stated that she was an eyewitness to the taking of the car. This, in turn, indicated the necessity for taking the deposition to prevent a failure of justice. The motion to take the deposition was made on notice to appellant, and the order to take it was made after the information was filed.

All of the requirements of Rule 17(a) for the taking of the deposition were adequately met.

### CONFRONTATION OF WITNESS

In support of his second issue on appeal, appellant argues that the confrontation clause of the Sixth Amendment to the United States Constitution was violated by reception of the deposition of Pam Terwey into evidence inasmuch as he contends that she was available to testify at the trial.

Rule 17(e), W.R.Cr.P. authorizes the use of a deposition at trial if the witness "is

unable to attend or testify because of sickness or infirmities." However, such use is also restricted by the confrontation clause of the Sixth Amendment.

"In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." Sixth Amendment, United States Constitution.

At an early date, the United States Supreme Court stated:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. * * *" *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895).

But the Court went on to say that the use of prior testimony of an unavailable witness does not violate the confrontation clause. It said at page 243 of 156 U.S., 15 S.Ct. at page 340:

"* * * But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. * * *"

■■ More recently the United States Supreme Court has recognized that the confrontation clause is not violated by admission into evidence of prior testimony of an unavailable witness if the prior testimony bore an "indicia of reliability" sufficient to afford the trier of fact a satisfactory basis for evaluating the truth of the prior testimony. *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33

L.Ed.2d 293 (1972). See *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). The indicia of reliability is satisfied when the prior testimony was under oath, when defendant was represented by counsel, when the counsel could and did cross-examine the witness, and when the cross-examination which would be conducted at the trial would not touch upon any new and significantly material line of inquiry. *Mancusi v. Stubbs, supra.* These factors were present in this case. Pam Terwey was under oath. Appellant was represented by counsel. The cross-examination by this counsel was effective. It brought forth a recantation by her of her previous identification of appellant as the one who had taken the car. A new, material line of inquiry was not indicated. This right to cross-examine rather than the right to observe the witness is the essential right secured by the confrontation clause. *Government of Canal Zone v. P. (Pinto)*, 5th Cir. 1979, 590 F.2d 1344; *Douglas v. State of Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

■■ But before these factors come into play, the witness must *be unavailable*, and the unavailability of Pam Terwey is the status questioned by appellant on this appeal. The determination of the availability or unavailability of a witness so as to allow his deposition to be used in a trial in lieu of his appearance rests within the sound discretion of the trial court and is reviewable only for abuse of such discretion. *United States v. LaFatch*, N.D.Ohio, 382 F.Supp. 630 (1974); *United States v. Bell*, 2nd Cir. 1974, 500 F.2d 1287; *United States v. Bello*, 5th Cir. 1976, 532 F.2d 422; *United States v. Amaya*, 5th Cir. 1976, 533 F.2d 188. See 23 Am.Jur.2d Depositions and Discovery §§ 119, 120 (1965). The trial court may consider the contents of the deposition itself in making this determination. *Colonnades, Inc. v. Vance Baldwin, Inc.*, Fla.App., 318 So.2d 515 (1975). The trial court was here presented with an allegation that the witness had suffered severe head injuries and

that her physician had instructed that she not appear in court for six weeks. She stated in her deposition that her physician told her "not to run around, * * * not to walk around, stay at home." She disobeyed these instructions by going to the courthouse for the deposition. The fact that she did so is the basis for appellant's contention that she was available for trial and that the trial court abused its discretion in finding otherwise. In making a decision that the witness is properly available, the trial court must contemplate the risk to which he would subject the witness' health if he insists on her presence. The fact that the witness disobeyed her physician's instructions to stay home does not relieve the trial court from its responsibility to give credence to such instructions in a given case.[1] Further, there is considerable difference between giving a deposition in the presence of two or three lawyers and a court reporter and under informal circumstances and that of testifying in court before judge, jury, the lawyers, reporter, bailiff, clerk and spectators and with court formalities. This difference may not be material to one with a broken arm or similar disability, but it may be very pertinent to one with a head injury.

A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances. *Eager v. Derowitsch*, 68 Wyo. 251, 232 P.2d 713 (1951); *Anderson v. Englehart*, 18 Wyo. 409, 108 P. 977 (1910); *DiPalma v. Wiesen*, 163 Conn. 293, 303 A.2d 709 (1972); *In re Estate of Horman*, 265 Cal.App.2d 796, 71 Cal.Rptr. 780 (1968). As already indicated, the determination of whether or not a witness is unable to attend or testify at a trial because of sickness or infirmities pursuant to Rule 17(e) is within the sound discretion of the trial court. The trial court did not here abuse the exercise of that discretion.

Affirmed.[2]

McCLINTOCK, Justice, specially concurring, with whom ROSE, J., joins.

Rule 17(a), W.R.Cr.P. permits the taking of a deposition if it appears that the prospective witness may be unable to attend a trial or hearing. Rule 17(e) provides that at the trial or hearing the deposition "may be used if it appears: * * * that the witness is unable to attend or testify because of sickness or infirmities." In other words, permission to take the deposition may be granted if there are only doubts as to the witness's availability at the trial; permission to use the deposition as evidence in the case may be granted only if it factually appears that the witness is unable to attend. To me this represents a very important distinction.

The State in its motion requesting permission to take Pam Terwey's deposition alleged "that said witness is an eyewitness to the alleged felony, that she has recently sustained a fractured skull and other injuries, that her doctor has advised that she not be brought to court for at least six weeks . . . ." This allegation is sufficient to show the possible need for deposition as required by Rule 17(a). However, the record does not contain sufficient evidence to support the trial judge's finding that Pam Terwey was too ill to testify at defendant's criminal trial or that it would not have been practical to postpone the trial until the witness recovered. While I agree with the majority that the trial judge did not abuse his discretion in granting the motion to take Pam Terwey's deposition in accordance with Rule 17(a), I cannot agree with their conclusion that there was suffi-

---

1. No consideration is here given to the contents of the July 13, 1979 letter from the physician which supported the allegations made in the prosecution's motion for an order to take the deposition inasmuch as it was not filed until July 19, 1979.

2. Our disposition does not reach appellee's contention that if error exists, it is harmless.

cient evidence to support the trial judge's decision to admit Pam Terwey's deposition into evidence. However, I find that admission of the deposition amounts to harmless error because Pam Terwey testified that she did not see Martinez take the police car.

In *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) the United States Supreme Court held that the confrontation clause is applicable to states through the Fourteenth Amendment. The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution provide in pertinent part that "[i]n all criminal prosecutions, the accused shall enjoy [have (Wyoming Constitution)] the right * * * to be confronted with the witnesses against him." And as the majority have correctly pointed out, this provision was adopted so that a person accused of a crime cannot be convicted merely by the use of depositions or ex parte affidavits. *Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). The words "to be confronted with the witnesses" mean more than the right of cross-examination. As pointed out by the United States Supreme Court, "[t]he right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness." *Barber v. Page*, 390 U.S. 719, 725, 88 S.Ct. 1318, 1322, 20 L.Ed.2d 255 (1968).

There is a substantial difference in the effect of the same words spoken in open court before the eyes of the judge and jury, than when read from a deposition. In the first instance the trier of fact may give credit to the testimony and in the latter the testimony read from the cold words of the transcript may be given no credit at all. It is impossible to transfer to paper the demeanor of a witness on the stand. There are many things other than the literal meaning of the words that are spoken that add to or detract from the witness's testimony.

"Taken in the aggregate, they constitute a vast moral power in eliciting the truth, all of which is lost when the examination is had out of court and the mere words of the witness are reproduced in the form of a deposition." *State v. McO'Blenis*, 24 Mo. 402, 421 (1857).

Because of the importance of the ability to scrutinize a witness on the stand, we have often held that we presume that the findings of fact made by a judge or jury are correct because of their opportunity to observe the witnesses. As we observed in *Madrid v. Norton*, Wyo., 596 P.2d 1108, 1117 (1979):

"   .   .   the trial judge was present and observed at first hand the demeanor and expressions of the witnesses. We must not forget that when we examine the cold words of the transcript of testimony, we do not have the benefit of how the trial judge sees and hears the witness—the pitch of the voice, facial changes, the movement in the witness— all of which may tell a separate story, to be given credence."

Just as we are reluctant to rely upon the literal meaning of the words in a transcript on appeal, a jury is likewise handicapped when it is presented with a deposition rather than the witness himself.

While I recognize the importance of having a witness personally testify at a criminal trial, I also realize that this is not always possible. Since the Sixth Amendment was ratified in 1791, these rights, relevant to this case, have been eroded away to some extent by necessity. In 1895 the United States Supreme Court construed the confrontation clause in such a manner as to allow the admission of transcribed testimony of two witnesses given at a prior trial where the witnesses were deceased at the time of the second trial. While recognizing that the admission of this testimony conflicted with the confrontation clause, the Court stated that

"   .   .   general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case." *Mattox, supra*, 156 U.S. at 243, 15 S.Ct. at 340.

In *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972) the Court held that a defendant's right of confrontation was not violated when the trial court admitted the transcript of the testimony given by the State's principal witness at the first trial. The testimony was admitted after the witness's son testified that the witness had become a resident of Sweden and was unavailable to testify at the second trial. The defendant was charged with and convicted of murder.

Our own court has held that a defendant's Sixth Amendment right of confrontation is not violated by admitting the testimony of a witness given during a previous trial, where there is a sufficient showing that the witness is either deceased or unavailable at the time of the second trial. In *Meldrum v. State*, 23 Wyo. 12, 146 P. 596, 600 (1915) the State, at defendant's second trial, introduced the transcript of the testimony given by their witnesses at defendant's first trial. This court held that the trial court was correct in allowing the transcript into evidence because the State had first laid the proper foundation. The State demonstrated that one of the witnesses was deceased and that the other two could not be found. The prosecution demonstrated that it had made a diligent search to locate the two absent witnesses, but was unable to find them. This court stated (146 P. at 600):

"* * * As a foundation for the admission of the evidence of the two other witnesses, the affidavit of the prosecuting attorney was filed, setting forth that in ample time he had procured a subpoena to issue and placed it in the hands of the proper officer for service, who had returned it with the officer's return indorsed thereon 'Not found'; that these witnesses had lived at Baggs, the place of the homicide; and that deponent had made diligent search and inquiry to locate and discover their whereabouts, and that he had been unable to do so, and to the best of his information they were somewhere in the state of California, and that their absence from the state and the trial was without his knowledge, consent, or connivance. Upon this ex parte affidavit the court held the foundation sufficiently laid for the admission of the evidence given by the absent witnesses at the former trial."

Finding that "[t]he evidence fairly supports the finding of the court as to the laying of the foundation, and, that being so," this court affirmed the trial court's ruling. *Meldrum, supra*, 146 P. at 600.

This court has also held that the introduction of a transcript of a witness's testimony given at a preliminary hearing is proper where the witness is absent at the time of trial. *Ivey v. State*, 24 Wyo. 1, 154 P. 589 (1916).

In *Barber, supra*, 390 U.S. at 725–726, 88 S.Ct. at 1322, the United States Supreme Court stated that

". . . [w]hile there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable, this is not, as we have pointed out, such a case."

The Court reversed defendant's conviction stemming from a charge of armed robbery finding that the trial court erred in allowing the State to introduce the preliminary hearing transcript of testimony given by a witness who was jointly charged with the defendant. The State failed to show that the witness was unavailable, and therefore admission of the preliminary-hearing testimony deprived defendant of his Sixth Amendment right to confrontation. At the time of the trial the witness was incarcerated in a federal prison, and the State made no effort to have the witness present at trial.

This court and the United States Supreme Court have approved the use of prior testimony given by a witness at a preliminary hearing or former trial if it is first determined that the witness is either deceased or unavailable. However, in the case at bar we are discussing the use of a deposition. No testimony was given before

a judge and jury; therefore the testimony may not be as reliable as that given before the strict scrutiny of the judge and jury. While I realize that there is a substantial difference between the two and that neither this court nor the United States Supreme Court has ever discussed the question, I have no objections to the admission of a deposition if two tests are met. First, the defendant must have had an opportunity to cross-examine the witness, and second it must be shown that the witness is actually unavailable. *Barber, supra,* 390 U.S. at 722, 88 S.Ct. at 1320; *United States v. Edwards,* 5 Cir., 469 F.2d 1362, 1369 (1972). Furthermore, the burden of showing that the witness is unavailable falls upon the party offering the prior testimony. *United States v. Amaya,* 5 Cir., 533 F.2d 188, 191 (1976), cert. denied 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551. Defendant contends that the second prong of the test has not been met and I agree.

The courts that have addressed the question of whether a witness is unavailable to testify at trial because of an illness have generally agreed that

".   .   . [a]lthough the duration of an illness is a proper element of unavailability, the establishment of permanence as to the particular illness is not an absolute requirement. The duration of the illness need only be in probability long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed." *Amaya,* supra, 533 F.2d at 191.

And if "illness is relied upon, it must be satisfactorily shown that the illness is a *serious* one." *People v. Del Mastro,* 72 Misc.2d 809, 339 N.Y.S.2d 389, 393 (1973). However, some courts have required a showing that the witness is permanently ill before he is excused from testifying at trial. *Sheehan v. State,* 65 Wis.2d 757, 223 N.W.2d 600, 604 (1974).

In *Del Mastro, supra,* 339 N.Y.S.2d at 393 the court held that a showing that a witness on a previous court appearance suffered an acute anxiety reaction known as hyperventilation syndrome was insufficient to establish that the witness was unavailable to testify at defendant's trial because of an illness. As the court stated,

".   .   . every defendant has the constitutional right to have witnesses against him produced in Court and cross-examined in the presence and under the scrutiny of the Jury. The cold record of former testimony may only be substituted when excusing factors are present."

In the case at bar the motion for the taking of Pam Terwey's deposition was filed and granted July 10, 1979. The trial judge ordered that the deposition was to be taken on July 13, 1979 at Pam Terwey's home. The trial judge's order was complied with to the extent that the deposition was taken on July 13, 1979, but interestingly enough the deposition was not taken at the witness's home, but rather at the Sweetwater County courthouse.

In addition to giving her deposition in the very courthouse where defendant's trial was held four days later, the witness did not testify that her doctor had advised her not to testify because it would be detrimental to her health. Pam did state that she had recently been involved in an accident and that she had suffered from a fractured skull and a blood clot. However, as the majority point out, "the witness testified that the only advice given her by her doctor was 'not to run around,  *  *  *  not to walk around, stay at home.'" 611 P.2d at 833. And when Pam was questioned on cross-examination about her ability to testify at Martinez's trial, she stated that even though her head injury was not causing her any problems at the deposition she did not feel she would be able to testify at the trial. When asked why she could not testify at trial she merely replied, "I don't know."

Based upon this testimony the majority have concluded that the trial judge did not abuse his discretion in admitting Pam Terwey's deposition into evidence. I find, however, that the record is void of any evidence indicating that her doctor advised the witness not to testify at defendant's trial or that in his medical opinion it would be improper for her so to testify. The State

has therefore failed to meet its burden and the trial judge erred when he admitted Pam Terwey's deposition into evidence.

Pam Terwey was a material witness and the importance of her testimony cannot be questioned. As the majority point out, the jury was informed through both indirect and direct testimony that Pam Terwey told the police she had seen Martinez take the police car. And it was upon this information that defendant was apprehended and charged with the crime. However, in her deposition that was eventually introduced at trial, Pam stated during direct examination that "I just seen Sam come out and that's all." She also stated, "I didn't see him [Martinez] take the car. . . ." During cross-examination she testified that while she had originally told the police that she saw Martinez take the police car she was not telling the police the truth, and that she had not actually seen Martinez take the police car. Absent a showing that Pam Terwey was unavailable to testify, I find defendant's constitutional right of confrontation was violated when the witness's deposition was introduced into evidence. But even though her deposition was introduced without a proper showing of unavailability, her testimony was not adverse to defendant's interest and, therefore, I cannot find defendant was actually prejudiced, and concur in the affirmance of the conviction. I would hate to have our opinion today be presented in some future case before this court as authority denying the right of confrontation or concerning the proper way to establish the unavailability of a material witness.